# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

RECEIVED

2006 NOV 20 P 4: 24

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| JUDY MILLER | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **CIVIL ACTION NO.** |
| JEFFERSON PILOT FINANCIAL | ) 2:06 cv 1042 -M&F |
| INSURANCE COMPANY, A | ) |
| CORPORATION; AND LINCOLN | ) |
| FINANCIAL GROUP, INC., A | ) |
| CORPORATION | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |

## NOTICE OF REMOVAL

Defendants Jefferson Pilot Financial Insurance Company ("Jefferson Pilot") and

Lincoln Financial Group, Inc. ("Lincoln Financial"), pursuant to 28 U.S.C. § 1446,

hereby file this Notice of Removal of this case from the Circuit Court of Montgomery

County, Alabama, Case No. CV-06-2610, where it is currently pending, to the United

States District Court for the Middle District of Alabama. This cause is removable

pursuant to 28 U.S.C. § 1331, in that Plaintiff's claims invoke the Court's federal

question jurisdiction under the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. § 1001, *et. seq.* Defendants respectfully show the Court as

follows:

1.    Judy Miller ("Plaintiff") instituted this civil action in the Circuit Court of Montgomery County, Alabama, on October 6, 2006. A true and correct copy of all process and pleadings as served upon Defendants is attached hereto as Exhibit "A" and is incorporated herein by reference.

2.    This action against Defendants could have been originally filed in this Court pursuant to 28 U.S.C. § 1331 in that Plaintiff seeks to recover benefits under an employer-sponsored plan and for conduct related to the failure to pay benefits allegedly due to her under such employer-sponsored plan.

3.    This Notice of Removal is filed within thirty (30) days after receipt by any Defendant of the initial pleading on which the aforesaid action is based pursuant to Rule 6(a) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1446(b). Jefferson Pilot and Lincoln Financial received the Complaint via certified mail on October 20, 2006.

4.    The United States District Court for the Middle District of Alabama, Northern Division, is a federal judicial district embracing the Circuit Court of Montgomery County, Alabama, where this suit was originally filed. Venue is therefore proper under 28 U.S.C. § 81(b)(1) and § 1441(a).

01413478.1

2

### FEDERAL QUESTION

5.    Plaintiff admits in her Complaint that she has short-term and long-term disability coverage under separate group insurance policies issued by Jefferson Pilot to Genesys Conferencing, Inc. ("Genesys") to insure the short-term and long-term disability components of the Genesys Conferencing, Inc. employee welfare benefit plan (hereinafter the "Plan"). Plaintiff was formerly employed by Genesys and was a participant in the Plan. A copy of Group Short-Term Disability Policy No. GL 000010040288 and Group Long-Term Disability Policy No. GL 000010040289 is attached hereto as Exhibits "B" and "C", respectively.

6.    Although Plaintiff's claim for disability benefits is couched in terms of state law breach of contract, the well-pleaded complaint rule is qualified by the doctrine of "super preemption." Whitt v. Sherman Int'l Corp., 147 F.3d 1325, 1329 (11th Cir. 1998). Indeed, the Supreme Court has recognized that the comprehensive remedial scheme established by ERISA for the loss or denial of employee benefits is one area where Congress intended to provide for complete or "super preemption" of state law claims. Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 64-67 (1987). Therefore, when a plaintiff is seeking relief that is available under 29 U.S.C. § 1132(a), "regardless of the merits of plaintiff's actual claims (recast as ERISA claims), relief is available, and there is complete preemption, when four elements are satisfied." Butero

01413478.1

3

v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1212 (11th Cir. 1999).  Those four

elements, according to the Court in Butero, are as follows: (1) there must be a relevant

ERISA plan; (2) the plaintiff must have standing to sue under the plan; (3) the

defendant must be an ERISA entity; and (4) the complaint must seek compensatory

relief akin to that available under 29 U.S.C. § 1132(a).  Id.

7.     All four elements are satisfied in the instant case.  Indeed, Plaintiff's

Complaint, on its face, satisfies elements (2), (3) and (4).  First of all, Plaintiff, as a

Plan participant, clearly has standing to sue to enforce the Plan's terms.  Second,

Jefferson Pilot, the entity responsible for insuring the Plan and adjudicating claims for

benefits under the Plan, is an ERISA entity.  See Englehardt v. Paul Revere Life Ins.

Co., 139 F.3d 1346, 1352 (11th Cir. 1998).  Third, the Complaint seeks to recover

short-term and long-term disability benefits allegedly owing under the terms of the

Plan.  Moreover, as evidenced by a review of the group insurance policies, it is also

abundantly clear that the Genesys Plan qualifies as an "employee welfare benefit plan"[1]

under ERISA.

8.     Accordingly, Plaintiff's breach of contract claim is completely preempted

by ERISA.  See Pilot Life Ins. Co. v. Dedeaux, 48 U.S. 41, 107 S.Ct. 1549 (1987)

---

[1] An "employee welfare benefit plan," as that term is defined by ERISA, requires: (1) a plan, fund, or
program (2) established or maintained (3) by an employer (4) for the purpose of providing disability
benefits (5) to participants or their beneficiaries.  Donovan v. Dillingham, 688 F.2d 1367, 1371 (11th
Cir. 1982).

01413478.1                                4

(ERISA preempts breach of contract and tortious breach of contract and emotional distress claims related to denial of benefits); Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1213 (11th Cir. 1999) (ERISA preempts failure to pay and contract claims related to denial of benefits); Gilbert v. Alta Health & Life Ins. Co., 276 F.3d 1292, 1299 (11th Cir. 2000) ("Alabama's tort [of] bad faith refusal to pay is not saved from preemption by ERISA's savings clause"). Plaintiff's remedy, if any, is limited to that provided by ERISA's civil enforcement provisions.

9.    This cause of action, which could have originally been filed in this Court, is subject to removal under 28 U.S.C. § 1441(b) as an action arising under federal law.

## MISCELLANEOUS

10.    A copy of this Notice of Removal is being filed with the Clerk of the Circuit Court of Montgomery County, Alabama, as provided by law, and written notice is being sent to Plaintiff's counsel. A copy of Defendants' Notice of Filing Notice of Removal, as submitted to the Circuit Court of Montgomery County, Alabama, is attached hereto as Exhibit "D."

11.    Defendants have not sought similar relief.

12.    Although 28 U.S.C. Section 1446(a) mandates all defendants join in or consent to the petition for removal, "unknown defendants . . . may be disregarded in determining whether the removing defendants have complied with." 28 U.S.C. Section

01413478.1

5

1446(a). As Jefferson Pilot and Lincoln Financial are the only Defendants other than the fictitious Defendants named in this action, there are no additional Defendants to join in or consent to this Notice of Removal.

13.    The prerequisites for removal under 28 U.S.C. § 1441 have been met.

14.    The allegations of this Notice are true and correct and within the jurisdiction of the United States District Court for the Middle District of Alabama, and this cause is removable to the United States District Court for the Middle District of Alabama.

15.    If any question arises as to the propriety of the removal of this action, Defendants respectfully request the opportunity to present a brief, oral argument, and evidence in support of their position that this cause is removable. See Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 949 (11th Cir. 2000).

**WHEREFORE, PREMISES CONSIDERED,** Defendants Jefferson Pilot Financial Insurance Company and Lincoln Financial Group, Inc. by and through their counsel, desiring to remove this civil action to the United States District Court for the Middle District of Alabama, Northern Division, being the district and division for the county in which such civil action is pending, prays that the filing of this Notice of Removal, the giving of written notice thereof to Plaintiff, and the filing of a copy of

01413478.1

6

this Notice of Removal with the clerk of the Circuit Court of Montgomery County,

Alabama, shall effect the removal of said civil action to this Honorable Court.

William B. Wahlheim, Jr.
John David Collins

Attorneys for Defendants
Jefferson Pilot Financial Insurance
Company and Lincoln Financial
Group, Inc.


OF COUNSEL

MAYNARD, COOPER & GALE, P.C.
2400 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35203-2602
(205) 254-1000

01413478.1                                        7

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon the following listed person by placing a copy of the same in the United States mail, postage prepaid and properly addressed, this the 17ᵗʰ day of November, 2006:

Carl S. Pittman
Larry Knopf Attorneys, P.C.
540 S. Perry Street
Montgomery, Alabama 36104


OF COUNSEL

# Exhibit A

IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

JUDY MILLER                    )
)
    PLAINTIFF,           )
)
VS.                         )     CIVIL ACTION NO.: *CV-06-2610*
)

JEFFERSON PILOT FINANCIAL INSURANCE COMPANY, A CORPORATION; AND LINCOLN FINANCIAL GROUP, INC., A CORPORATION; No. 1, that entity or those entities, whether singular or plural, Plaintiff hereby intending to designate the insurer of Plaintiff under disability insurance policies; No. 2, whether singular or plural, Plaintiff hereby intending to designate that entity or entities who or which agreed to insure the Plaintiff as provided in the disability insurance policies; Plaintiff avers that the identity of the fictitious party defendants are otherwise unknown to the Plaintiff at this time, their identity as a proper party defendant is not known to the Plaintiff at this time, but their true names will be substituted by amendment when the aforesaid lacking knowledge is ascertained.
)
    Defendants.         )

## S U M M O N S

    This service by certified mail of this summons is initiated upon the written request of plaintiffs' attorney pursuant to the Alabama Rules of Civil Procedure upon the following defendant:

NOTICE TO:          Lincoln Financial Group, Inc.
c/o CSC Lawyers Incorporating Service, Inc.
150 South Perry Street
Montgomery, AL 36104

2006 OCT -6  PM 1:51
FILED
CIRCUIT COURT OF
MONTGOMERY COUNTY

## NOTICE TO DEFENDANTS

    The Complaint which is attached to this Summons is important and you must take immediate action to protect your rights.  You are required to mail or deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint within thirty (30) days of receipt of service of the Summons and Complaint, to Carl S. Pittman, Attorney for Plaintiff, whose address is: 540 South Perry Street, Montgomery, Alabama 36104.  THIS ANSWER MUST BE MAILED OR DELIVERED BY YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE

COMPLAINT.  You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.

_Melissa Rittenar_

CLERK OF THE COURT

DATED___10|19|06_____

CERTIFIED MAIL™

7006 0810 0005 2182 3449

Lincoln Financial Group, Inc.
c/o CSC Lawyers Incorporating Service, Inc.
150 South Perry Street
Montgomery, AL 36104

Circuit Court Clerk-Civil
Montgomery County Court
251 S. Lawrence Street
Montgomery, AL 36104

IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

JUDY MILLER                          )
                                     )
    PLAINTIFF,                       )
                                     )
VS.                                  )        CIVIL ACTION NO.: _CV-06-2610_
                                     )
JEFFERSON PILOT FINANCIAL INSURANCE COMPANY, A CORPORATION;
AND LINCOLN FINANCIAL GROUP, INC., A CORPORATION; No. 1, that entity
or those entities, whether singular or plural, Plaintiff hereby intending to
designate the insurer of Plaintiff under disability insurance policies; No. 2,
whether singular or plural, Plaintiff hereby intending to designate that entity or
entities who or which agreed to insure the Plaintiff as provided in the disability
insurance policies; Plaintiff avers that the identity of the fictitious party defendants
are otherwise unknown to the Plaintiff at this time, their identity as a proper party
defendant is not known to the Plaintiff at this time, but their true names will be
substituted by amendment when the aforesaid lacking knowledge is ascertained.
                                     )
    Defendants.                      )

## COMPLAINT

### COUNT I

    1.    Plaintiff, Judy Miller, is an adult individual that resided in
Montgomery, Alabama at the time of the accrual of the cause of action and who
now resides in the State of Georgia.  Defendant, Jefferson Pilot Financial
Insurance Company, is a corporation that was doing business in Montgomery
County, Alabama at the time of the acts and events at issue in this case.
Defendant, Lincoln Financial Group, Inc. is a corporation doing business in
Montgomery, Alabama.

    2.    In July, 2003, Plaintiff, Judy Miller was employed by Genesys
Conferencing, Inc. in Montgomery, Alabama as a telecommunications manager.
Through her employment with Genesys Conferencing, Inc., Plaintiff, Judy Miller,
was insured for short term and long term disability under group policies of
insurance issued by Defendant, Jefferson Pilot Insurance Company.  The group
policy number of the short term disability insurance policy is:  GL 000010040288.
The group policy number of the long term disability policy is:  GL 000010040289.
Defendant, Jefferson Pilot Insurance Company and Defendant, Lincoln Financial
Group, Inc. subsequently entered into a corporate merger, whereby Defendant,
Lincoln Financial Group, Inc. assumed the contractual and legal obligations for
the group disability insurance policies described herein.

    3.    On or about July 9, 2003, Plaintiff, Judy Miller, became unable to

work due to a combination of medical conditions that caused her to be totally disabled under the terms of the disability insurance policies described in paragraph 2 herein.

4.    Plaintiff, Judy Miller, notified Defendant, Jefferson Pilot Insurance Company, that she was disabled, and she presented a claim for disability insurance benefits in accordance with the provisions of the disability insurance policies and the instructions of Defendant, Jefferson Pilot Insurance Company.

5.    Defendant, Jefferson Pilot Insurance Company denied the claim of Plaintiff, Judy Miller, in a letter dated August 28, 2003.  The stated basis of for the denial of the claim was that the medical evidence did not support a finding of total disability.  In accordance with the provisions of the disability insurance policies as well as the instructions of Defendant, Jefferson Pilot Insurance Company, Plaintiff, Judy Miller, appealed the denial of her claim and was again denied for the same reason.

6.    Neither Defendant, Jefferson Pilot Insurance Company, nor Defendant, Lincoln Financial Group, Inc., has paid any disability benefits to Plaintiff, Judy Miller under the group disability insurance policies described herein.

7.    Plaintiff, Judy Miller, has been disabled since July 9, 2003 and she is entitled to benefits for short term and long term disability under the group disability insurance policies described herein.  Both Defendant, Jefferson Pilot Insurance Company, and Defendant Lincoln Financial Group, Inc., have breached the agreement to provide disability insurance benefits to Plaintiff, Judy Miller, under the group disability insurance policies described herein. As a direct and proximate result of the breach of contract by Defendant, Jefferson Pilot Insurance Company, and Defendant, Lincoln Financial Group, Inc., Plaintiff, Judy Miller, was caused to sustain damages consisting of the short term disability benefits and long term disability benefits that she is entitled to be paid under the terms of the group disability insurance policies described herein and other damages.

8.    The Defendants, as described by fictitious parties 1 and 2 in the Summons, whose more correct names and identities are unknown to Plaintiff, but which will be more correctly named and identified when ascertained by them are that entity or those entities, whether singular or plural, Plaintiff hereby intending to designate the insurer of Plaintiff under disability insurance policies; and  that entity or those entities, whether singular or plural, Plaintiff hereby intending to designate that entity or entities who or which agreed to insure the Plaintiff as provided in the disability insurance policies.

9.    Plaintiff further avers that all Plaintiff's damages were proximately caused by the foregoing breaches of contract of Defendant, Jefferson Pilot

Insurance Company, and Defendant, Lincoln Financial Group, Inc., and all or one of the fictitious defendants 1, and 2 previously specified.

10.     The aforesaid breaches of contract of each of the above-described defendants, including the fictitious party defendants, combined and concurred, and as a proximate consequence thereof, Plaintiff, Judy Miller, sustained damages as follows:

a.     She did not receive the disability benefits under the group disability insurance policies described herein;

b.     She suffered other financial damages as a direct and proximate result of not receiving the disability benefits under the group disability insurance policies described herein.

WHEREFORE, THE PREMISES CONSIDERED, Judy Miller, demands judgment from Defendants in an amount to be determined by the Court, plus interest and costs.

Carl S. Pittman (PIT021)
Attorney For Plaintiff

OF COUNSEL:

Larry Knopf Attorneys, P.C.
540 S. Perry Street
Montgomery, Alabama 36104
(334) 269-1342

SERVE DEFENDANTS BY CERTIFIED MAIL AT:

Jefferson Pilot Financial Insurance Company
c/o CSC Lawyers Incorporating Service, Inc.
150 South Perry Street
Montgomery, AL 36104

Lincoln Financial Group, Inc.
c/o CSC Lawyers Incorporating Service, Inc.
150 South Perry Street
Montgomery, AL 36104

# Exhibit B



**JEFFERSON PILOT**
**FINANCIAL**

**Jefferson Pilot Financial Insurance Company**
8801 Indian Hills Drive, Omaha NE 68114-4066
(402) 361-7300    A Stock Company

Group Policyholder:

Genesys Conferencing, Inc.

In Consideration of the Group Policyholder's application for this Policy and payment of all premiums when due, Jefferson Pilot Financial Insurance Company agrees to make the payments provided in this Policy to the persons entitled to them.

The first premium for this Policy is due on its effective date. Subsequent premiums are due on February 1, 2002, and on the same day of each month after that. Policy anniversaries will be each January 1st; unless shown otherwise on the Premium Rate Schedule inside.

The provisions and conditions set forth on the following pages are a part of this Policy, as fully as if recited over the signatures below.

Jefferson Pilot Financial Insurance Company has executed this Policy at its Home Office in Omaha, Nebraska. The issue date of this Policy is January 1, 2002.

Chief Executive Officer

Secretary

**GROUP INSURANCE POLICY**
No. 000010040288
PROVIDING
WEEKLY DISABILITY INCOME INSURANCE

GL1101-TITLE PAGE

95
02/01/03

# TABLE OF CONTENTS

Schedule of Insurance.................................................................3

Definitions ...........................................................................4

General Provisions ...................................................................5

Eligibility and Effective Dates for Personal Insurance ....................................6

Individual Terminations ..............................................................7

Premiums and Premium Rates .......................................................8

Grace Period.........................................................................9

Policy Termination ...................................................................9

Claims Procedures for Weekly Disability Income Benefits ..............................10

Weekly Disability Income Insurance...................................................12

Prior Insurance Credit Provision .....................................................16

GL1101-1

02/01/03

## SCHEDULE OF INSURANCE

The amount of an Insured Person's insurance is determined from the following table.  The initial amount of coverage is the amount which applies to an Insured Person's Class on the date his or her coverage takes effect.  An Insured Person may become eligible for increases in an amount of insurance in accord with the table.  Any such increase will take effect on the latest of:

(1)    the first day of the Insurance Month which coincides with or follows the date on which the Insured Person becomes eligible for the increase; provided he or she is Actively at Work on that day;

(2)    the day the Insured Person resumes Active Work, if not Actively at Work on the day the increase would otherwise take effect; or

(3)    the day any required evidence of insurability is approved by the Company.

Any decrease will take effect on the day of the change; whether or not the Insured Person is Actively at Work.

## CLASSIFICATION

Class 1        All Full-Time Employees

WAITING PERIOD:    30 days of continuous Active Work  (For date insurance begins, refer to "Effective Date" section)

GL1101-2

02/01/03

## SCHEDULE OF INSURANCE (CONTINUED)

WEEKLY DISABILITY INCOME INSURANCE

|  | BENEFIT PERCENTAGE | MAXIMUM WEEKLY BENEFIT |
|---|---|---|
| Class 1 | 66 2/3% | $1,000 |

MAXIMUM BENEFIT PERIOD:   26 weeks

DAY BENEFITS BEGIN:   1st day of Hospitalization (for 8 hours or more);
1st day of Disability due to accidental Injury; and
8th consecutive day of Disability due to Sickness.

The Day Benefits Begin may be reached by days of Total Disability, Partial Disability, or any combination thereof.

The Maximum Weekly Disability Benefit will not exceed the Benefit Percentage times Basic Weekly Earnings.  **Basic Weekly Earnings** means the Insured Person's average weekly base salary or hourly pay from the Group Policyholder before taxes on the determination date.  The determination date is the last day worked just prior to the date the Disability begins.

It also includes:
1.   commissions averaged over the 12 months just prior to the determination date or over the actual period of employment with the Group Policyholder just prior to that date, if shorter.

It does **not** include bonuses, overtime pay, or any other extra compensation.  It does **not** include income from a source other than the Group Policyholder.  It will not exceed the amount shown in the Group Policyholder's financial records, the amount for which premium has been paid, or the maximum covered earnings permitted by this Policy; whichever is less.

Weekly Disability Income Insurance will terminate when an Insured Person retires.

The Minimum Weekly Disability Benefit is 10% of the Insured Person's Weekly Total Disability Benefit.

This Policy does not replace or provide benefits required by Workers' Compensation laws or any state disability insurance plan laws.

Insured Persons are not required to make contributions for Weekly Disability Income Insurance.

GL1101-2

02/01/03

# DEFINITIONS

ACTIVE WORK or ACTIVELY AT WORK means an employee's full-time performance of all customary duties of his or her occupation at:
(1)    the GROUP POLICYHOLDER'S place of business; or
(2)    any other business location where the employee is required to travel.

Unless disabled on the prior workday or on the day of absence, an employee will be considered Actively at Work on the following days:
(1)    a Saturday, Sunday or holiday which is not a scheduled workday;
(2)    a paid vacation day, or other scheduled or unscheduled non-workday; or
(3)    an excused or emergency leave of absence (except a medical leave).

COMPANY means Jefferson Pilot Financial Insurance Company, a Nebraska corporation, whose Home Office address is 8801 Indian Hills Drive, Omaha, Nebraska 68114-4066.

DAY OR DATE means at 12:01 A.M., Standard Time, at the GROUP POLICYHOLDER'S place of business; when used with regard to eligibility dates and effective dates. It means 12:00 midnight, Standard Time, at the same place; when used with regard to termination dates.

FULL-TIME EMPLOYEE means an employee of the GROUP POLICYHOLDER:
(1)    whose employment with the GROUP POLICYHOLDER is the employee's principal occupation;
(2)    who is not a temporary or seasonal employee; and
(3)    who is regularly scheduled to work at such occupation at least 30 hours each week.

GROUP POLICYHOLDER means the person, partnership, corporation, or trust as shown on the Title Page of this Policy.

INSURANCE MONTH means that period of time:
(1)    beginning at 12:01 A.M. Standard Time, at the GROUP POLICYHOLDER'S place of business on the first day of any calendar month; and
(2)    ending at 12:00 midnight on the last day of the same calendar month.

INSURED PERSON means a PERSON for whom the coverages provided by this Policy are in effect.

PERSON means a FULL-TIME EMPLOYEE of the GROUP POLICYHOLDER:
(1)    who is a member of an employee class which is eligible for coverage under this Policy; and
(2)    who has completed an enrollment form.

PERSONAL INSURANCE means the insurance provided by this Policy on Insured Persons.

PHYSICIAN means a licensed practitioner of the healing arts other than the Insured Person or a relative of the Insured Person.

POLICY means this Group Insurance Policy issued by the Company to the Group Policyholder.

GL1101-3 91

(REV)
02/01/03

## GENERAL PROVISIONS

**ENTIRE CONTRACT.** The entire contract between the parties consists of:
    (1)   this Policy and the Group Policyholder's application ( a copy is attached); and
    (2)   the Insured Persons' enrollment cards, if any.
All statements made by the Group Policyholder and by Insured Persons are representations and not warranties. No statement made by an Insured Person will be used to contest the coverage provided by this Policy; unless:
    (1)   it is contained in a written statement signed by that Insured Person; and
    (2)   a copy of the statement is furnished to the Insured Person or Beneficiary.

Only an Officer of the Company may change this Policy or extend the time for payment of any premium. No change will be valid unless made in writing and signed by an Officer of the Company. Any change so made will be binding on all persons referred to in this Policy.

**INCONTESTABILITY.** Except for the non-payment of premiums, this Policy shall be incontestable after two years from it's date of issue; and the insurance on any person insured under this Policy shall be incontestable after it has been in force for a period of two years during such person's lifetime. This clause will not affect the Company's right to contest claims made for disability, accidental death, or accidental dismemberment benefits.

**NONPARTICIPATION.** This Policy will not be entitled to share in the surplus earnings of the Company.

**BASIS OF RESERVE.** The reserve for this Policy will not be less than the reserve computed using:
    (1)   the 1970 Intercompany Group Life Disability Valuation Table; and
    (2)   interest at not less than three percent per annum.

**INFORMATION TO BE FURNISHED.** The Group Policyholder may be required to furnish any information needed to administer this Policy. Clerical error by the Group Policyholder will not:
    (1)   affect the amount of insurance which would otherwise be in effect; or
    (2)   continue insurance which otherwise would be terminated.

Once an error is discovered, an equitable adjustment in premium will be made. If a premium adjustment involves the return of unearned premium, the amount of the return will be limited to the twelve month period which precedes the date the Company receives proof such an adjustment should be made.

The Company may inspect any of the Group Policyholder's records which relate to this Policy.

**MISSTATEMENT OF AGE.** If an Insured Person's age has been misstated, premiums will be subject to an equitable adjustment. If the amount of benefit depends upon age; then the benefit will be that which would have been payable, based upon the person's correct age.

**CERTIFICATES.** The Group Policyholder will be furnished with individual Certificates for delivery to each Insured Person. These certificates summarize the benefits provided by this Policy. If there is a conflict between the Policy and the Certificate, the Policy will control.

**CONFORMITY WITH STATE STATUTES.** If any provision of this Policy conflicts with any applicable law, the provision will be deemed to conform to the minimum requirements of the law.

**WORKER'S COMPENSATION.** This Policy is not to be construed to provide benefits required by Worker's Compensation laws.

GL1101-4 95 MA

02/01/03

## ELIGIBILITY AND EFFECTIVE DATES FOR PERSONAL INSURANCE

ELIGIBILITY.  A Person becomes eligible for the coverage provided by this Policy on the later of:
    (1)   the Policy's date of issue; or
    (2)   the date the Waiting Period is completed.

WAITING PERIOD.  (See Schedule of Insurance).

EFFECTIVE DATE.  Personal Insurance becomes effective on the latest of:
    (1)   the first day of the Insurance Month coinciding with or next following the date the Person becomes eligible for the coverage;
    (2)   the date the Person resumes Active Work, if not Actively at Work on the day he or she becomes eligible;
    (3)   the date the Person makes written application for Personal Insurance; and signs:
        (a)   a payroll deduction order, if Insured Persons pay any part of the Policy premium; or
        (b)   an order to pay premiums from the Person's Section 125 Plan account, if Employer contributions are made through a Section 125 Plan; or
    (4)   the date the Company approves the Person's coverage, if evidence of insurability is required.

EVIDENCE OF INSURABILITY.  Evidence of insurability satisfactory to the Company must be submitted when:
    (1)   a Person makes written application for Personal Insurance more than 31 days after becoming eligible for the coverage; or
    (2)   a Person makes written application for Personal Insurance after he or she has requested:
        (a)   to cancel Personal Insurance;
        (b)   to stop payroll deductions for the coverage; or
        (c)   to stop premium payments from the Section 125 Plan account.

EXCEPTIONS.  If an Insured Person's coverage terminates due to an approved leave of absence or military leave, the Company will waive any Waiting Period or evidence of insurability requirement upon his or her return; provided:
    (1)   the Person returns within six months after the leave begins;
    (2)   the Person applies or is enrolled within 31 days after resuming Active Work; and
    (3)   the reinstated amount of insurance does not exceed the amount which terminated.

If an Insured Person's coverage terminates due to a lay-off, the Company will waive any Waiting Period or evidence of insurability requirement upon his or her return; provided:
    (1)   the Person returns within 12 months after the date the lay-off begins;
    (2)   the Person applies or is reenrolled within 31 days after resuming Active Work; and
    (3)   the reinstated amount of insurance does not exceed the amount which terminated.
Reinstatement will take effect on the date the Insured Person returns to Active Work.

If an Insured Person's coverage terminates because his or her employment ends, the Company will waive any Waiting Period or evidence of insurability requirement upon his or her return; provided:
    (1)   the Person is rehired within 12 months after employment terminated;
    (2)   the Person applies or is reenrolled within 31 days after resuming Active Work; and
    (3)   the reinstated amount of insurance does not exceed the amount which terminated.
Reinstatement will take effect on the date the Insured Person returns to Active Work.

GL1101-5 93 MA

(FMLA)
02/01/03

## INDIVIDUAL TERMINATIONS

An Insured Person's coverage will terminate on the earliest of:
- (1)  the date this Policy terminates;
- (2)  the last day of the Insurance Month in which the Insured Person requests termination;
- (3)  the last day of the last Insurance Month for which premium payment is made on the Insured Person's behalf;
- (4)  the date the Insured Person ceases to be in a class of employees which is eligible for coverage under this Policy;
- (5)  with respect to any particular insurance benefit, the date the portion of the Policy providing that benefit terminates;
- (6)  the date on which the Insured Person's employment with the Group Policyholder or Participating Employer terminates; or
- (7)  the date the Insured Person enters the armed services of any state or country on active duty; except for duty of 30 days or less for training in the Reserves or National Guard.  (If the Insured Person sends proof of military service, the Company will refund any unearned premium.)

Ceasing Active Work results in termination of eligibility; but coverage may be continued as follows:
- (1)  If the Insured Person does not become eligible for similar group coverage within 31 days after employment ends; then coverage may be continued until the earlier of:
  - (a)  the 31st day after employment ends; or
  - (b)  the day coverage would otherwise end;
  - provided the required premium is paid on his or her behalf.
- (2)  If the Insured Person ceases Active Work due to a plant closing (as defined by Massachusetts law); then coverage may be continued until the earlier of:
  - (a)  the 90th day after ceasing Active Work; or
  - (b)  the day coverage would otherwise end;
  - provided the required premium is paid on his or her behalf.
- (3)  If the Insured Person ceases Active Work, due to an approved leave of absence to care for his or her dependent child under 3 years of age; then coverage may be continued until the earlier of:
  - (a)  the day such approved leave of absence ends; or
  - (b)  the day coverage would otherwise end;
  - provided the required premium is paid on his or her behalf.
- (4)  If the Insured Person is disabled due to illness or injury, then coverage may be continued until the earlier of:
  - (a)  the day the Person is no longer disabled; or
  - (b)  the day coverage would otherwise end;
  - provided premium payments are made on his or her behalf.
- (5)  If the Insured Person ceases work due to a temporary lay off, an approved leave of absence, or a military leave; then coverage may be continued until the earlier of:
  - (a)  the end of the third Insurance Month after the lay off or leave begins; or
  - (b)  the day coverage would otherwise end;
  - provided premium payments are made on his or her behalf.

When an Insured Person is entitled to continue coverage in accord with two or more provisions shown above; then he or she may elect the longest continuation period (but only one).

GL1101-5 93 MA

(FMLA)
02/01/03

## PREMIUMS AND PREMIUM RATES

**PAYMENT OF PREMIUMS.**  No coverage provided by this Policy will be in effect until the first premium for such coverage is paid.  For coverage to remain in effect, each subsequent premium must be paid on or before its due date.  The Group Policyholder is responsible for paying all premiums as they become due.  Premiums are payable on or before their due dates at the Company's Home Office.  The premium must be paid in U.S. dollars.

**PREMIUM RATE CHANGE.**  The Company may change any premium rate on any of the following dates:
  (1)  the date this Policy's terms are changed;
  (2)  the date the Company's liability is changed due to a change in federal, state or local law;
  (3)  the date the Group Policyholder (or any covered division, subsidiary or affiliated company) relocates, or is added to or removed from this Policy;
  (4)  the date the number of Insured Persons changes by 25% or more from the enrollment on the date this Policy took effect, or the most recent Rate Guarantee Date expired, if later; or
  (5)  on any premium due date on or after this Policy's first anniversary, or any later Rate Guarantee Date agreed upon by the Company.

Unless the Company and the Group Policyholder agree otherwise, the Company will give at least 31 days' advance written notice of any increase in premium rates.

**PREMIUM AMOUNT.**  The amount of premium due on each due date will be the sum of the products obtained by multiplying each rate shown in the Premium Rate Schedule by the amount of insurance to which the rate applies.

Premium adjustments will not be pro-rated daily.  Instead, premium will be adjusted as follows.
  (1)  When an Insured Person's insurance or increase takes effect, premium will be charged from the monthly due date coinciding with or next following that change.
  (2)  When all or part of an Insured Person's insurance terminates, the applicable premium will cease on the monthly due date coinciding with or next following that termination.
  (3)  When premiums are paid other than monthly, increases or decreases will result in adjustment from the premium due date coinciding with or next following that change.

The above manner of charging premium is for accounting purposes only.  It will not extend coverage beyond a date it would have otherwise terminated.  Each premium payment will include any adjustments in past premiums, which are needed due to changes that have not yet been taken into account.  If a premium adjustment involves a return of unearned premium, the refund will be limited to the prior 12-month period.

## PREMIUM RATE SCHEDULE

Monthly Weekly Disability Income Rate $.41 per $10 of insurance

GL1101-6 99

02/01/03

## GRACE PERIOD

A grace period of 31 days from the due date will be allowed for the payment of each premium after the first. The Policy will remain in effect during the grace period; unless the Group Policyholder gives the Company advance written notice of termination. The Group Policyholder will remain liable for payment of a pro rata premium for the time this Policy remained in force during the grace period.

## POLICY TERMINATION

**TERMINATION BY THE COMPANY.** To terminate this Policy, the Company must give the Group Policyholder at least 31 days' advance written notice of its intent to do so. Until the premium rate has been in effect for at least 12 months, the Company can terminate coverage only if:

    (1)   the total number of Insured Persons is less than ten;
    (2)   all of the premium is paid by the Group Policyholder and less than 100% of those eligible for coverage are insured;
    (3)   part of the premium is paid by Insured Persons and less than 75% of those eligible for coverage are insured;
    (4)   the Group Policyholder, without good cause:
        (a)   fails to promptly furnish any information the Company reasonably requires; or
        (b)   fails to perform its duties pertaining to this Policy in good faith;
    (5)   the Company's liability is changed as a result of any change in federal, state or local law which affects this Policy;
    (6)   the Group Policyholder (or any covered division, subsidiary or affiliated company) relocates, dissolves or merges, or is added to or removed from this Policy;
    (7)   any coverage for one, or more classes ceases to be provided under this Policy; or
    (8)   the number of Insured Persons changes by 25% or more from the enrollment on the date this Policy took effect, or the most recent Rate Guarantee Date expired, if earlier.

After the premium rate has been in effect for at least 12 months, the Company can terminate coverage on any premium due date, by giving 31 days' advance written notice. Such termination may be with respect to this Policy as a whole, to any coverage(s) provided under it, or to any class of Insured Persons under it.

**TERMINATION BY GROUP POLICYHOLDER.** The Group Policyholder may terminate this Policy at any time, by giving the Company advance written notice. Coverage will then terminate:

    (1)   on the date the Company receives the notice; or
    (2)   any later date the Group Policyholder and the Company have agreed upon.

The Group Policyholder remains responsible for the payment of premiums to the date of termination.

**AUTOMATIC TERMINATION.** If any premium remains unpaid at the end of the Grace Period; then this Policy will automatically terminate, without any action on the Company's part, on the last day of the Grace Period.

**EFFECT ON INCURRED CLAIMS.** Termination of this Policy will not affect benefits otherwise payable for a claim incurred while this Policy is in force.

GL1101-7 99

No Bene.-ten lives
02/01/03

## CLAIMS PROCEDURES FOR WEEKLY DISABILITY INCOME BENEFITS

**NOTICE OF CLAIM.** Written notice of claim must be given within 20 days after the loss occurs. The notice must be sent to the Company's Home Office. It should include:
    (1)   the Insured Person's name and address; and
    (2)   the number of this Policy.
If this is not possible, written notice must be given as soon as it is reasonably possible.

**CLAIM FORMS.** When notice of claim is received, the Company will send claim forms to you. If the Company does not send the forms within 15 days; then the Insured Person may send the Company written proof of Disability in a letter stating the date the Disability started, its cause and degree. The Company will periodically send you additional claim forms.

**PROOF OF CLAIM.** The Company must be given written proof of claim within 90 days after the Day Benefits Begin. If it was not reasonably possible to give written proof in the time required, the claim will not be reduced or denied solely for this reason; provided the proof is filed as soon as reasonably possible. In any event, proof of claim must be given no later than one year from such time. These time limits will not apply while the Insured Person lacks legal capacity, however.

Proof of claim must be provided at the Insured Person's own expense. It must show the date the Disability started, its cause and degree. It must show any restrictions on performing the duties of the Insured Person's regular occupation. Documentation must include:
    (1)   completed statements by the Insured Person, the Employer and the attending Physician;
    (2)   a signed authorization for the Company to obtain more information; and
    (3)   any other items the Company may reasonably require in support of the claim.
Proof of continued Disability and regular care of a Physician must be given to the Company, within 60 days after the Company requests it; if it is not, benefits may be denied or suspended.

**EXAM OR AUTOPSY.** At anytime while a claim is pending, the Company may:
    (1)   have the Insured Person examined by a Physician, specialist or vocational rehabilitation expert of the Company's choice, as often as reasonably required; and
    (2)   deny or suspend benefits if the Insured Person fails to attend an exam, without good cause; or fails to cooperate with the examiner.
In case of death, the Company may also have an autopsy done, where it is not forbidden by law. Any such exam or autopsy will be at the Company's expense.

**TIME OF PAYMENT OF CLAIMS.** When the Company receives proof of claim, disability income benefits payable under this Policy will be paid bi-weekly, during any period for which the Company is liable. If benefits are due for less than a week, they will be paid on a prorata basis. The daily rate will equal 1/7 of the weekly benefit. Any balance which remains unpaid at the end of the period of liability will be paid immediately upon receipt of due written proof.

**TO WHOM PAYABLE.** All disability income benefits are payable to the Insured Person, while living. After his or her death, such benefits will be payable to the Insured Person's estate, or in accord with the Facility of Payment provision.

**NOTICE OF CLAIM DECISION.** Within a reasonable time after receiving proof of loss, the Company will send the Insured Person a written notice of their claim decision. If the Company denies any part of the claim, the written notice will:
    (1)   explain the reason for the denial under the terms of this Policy; and
    (2)   inform the Insured Person of the right to a review of the Company's decision.
If the Insured Person does not receive a written decision within 90 days after the Company receives the claim; then he or she has a right to an immediate review, as if the claim was denied.

GL1101-13B

STD
02/01/03

## CLAIMS PROCEDURES - CONTINUED

REVIEW PROCEDURE. Within 60 days after receiving a denial notice, the Insured Person may request a claim review by sending the Company a written request, along with any written comments or other items to support the claim. He or she may review certain non-privileged information relating to the request for review.

The Company will review the claim and send the Insured Person a written notice of their decision within 60 days after receiving the request for review; or within 120 days, if special circumstances require an extension. The notice will state the reasons for the Company's decision under the terms of this Policy.

RIGHT OF RECOVERY. If benefits have been overpaid on any claim, full reimbursement to the Company is required within 60 days. If reimbursement is not made, the Company has the right to:
   (1)   reduce future benefits until full reimbursement is made; and
   (2)   recover such overpayments from the Insured Person, or his or her estate.
Such reimbursement is required whether the overpayment is due to fraud, the Company's error in processing a claim, the Insured Person's receipt of Other Income Benefits, or any other reason.

LEGAL ACTIONS. No legal action to recover any benefits may be brought until 60 days after the required written proof of claim has been given. No legal action may be brought more than three years after written proof of claim is required to be given.

COMPANY'S DISCRETIONARY AUTHORITY. Except for those functions which this Policy specifically reserves to the Group Policyholder or Employer, the Company has the authority to manage this Policy, to administer claims, to interpret Policy provisions, and to resolve questions arising under this Policy. The Company's authority includes (but is not limited to) the right to:
   (1)   establish and enforce procedures for administering this Policy and claims under it;
   (2)   determine Employees' eligibility for insurance and entitlement to benefits;
   (3)   determine what information the Company reasonably requires to make such decisions; and
   (4)   resolve all matters when a claim review is requested.
Any decision the Company makes, in the exercise of its authority, shall be conclusive and binding; subject to the Insured Person's right to request a state insurance department review or to bring legal action.

## WEEKLY DISABILITY INCOME INSURANCE

**TOTAL DISABILITY BENEFIT.** The Company will pay a Weekly Total Disability Benefit for each week the Total Disability continues, if the Insured Person:
- (1)  becomes Totally Disabled while insured for this benefit;
- (2)  is under the regular care of a Physician; and
- (3)  at his or her own expense, submits proof of continued Total Disability and Physician's care to the Company upon request.

Benefits start on the Day Benefits Begin, and end on the earliest of:
- (1)  the date the Insured Person ceases to be Totally Disabled or dies;
- (2)  the date the Maximum Benefit Period ends;
- (3)  the date the Insured Person is able, but chooses not to engage in Partial Disability Employment in his or her regular occupation;
- (4)  the date the Insured Person fails to take a required medical exam, without good cause; or
- (5)  the 60th day after the Company requests additional proof, if not given.

Proportional benefits will be paid for a partial week of Total Disability.

The amount of the Weekly Total Disability Benefit equals:
- (1)  the Insured Person's Basic Weekly Earnings multiplied by the Benefit Percentage (limited to the Maximum Weekly Benefit); minus
- (2)  Other Income Benefits;

but will not be less than the Minimum Weekly Benefit.

The Day Benefits Begin, Maximum Benefit Period, Benefit Percentage, Maximum Weekly Benefit, Minimum Weekly Benefit and definition of Basic Weekly Earnings are shown in the Schedule of Insurance.

**PARTIAL DISABILITY BENEFIT.** The Company will pay the Weekly Partial Disability Benefit, if the Insured Person:
- (1)  becomes Partially Disabled while insured for this benefit;
- (2)  is engaged in Partial Disability Employment;
- (3)  is earning at least 20% of Basic Weekly Earnings when Partial Disability Employment begins;
- (4)  is under the regular care of a Physician; and
- (5)  at his or her own expense, submits proof of continued Partial Disability, Physician's care and reduced earnings to the Company upon request.

The Insured Person does not have to be Totally Disabled prior to receiving Weekly Partial Disability Benefits. The Day Benefits Begin may be reached by days of Total Disability, Partial Disability, or any combination thereof. Proportional benefits will be paid for a partial week of Partial Disability.

Benefits start on the Day Benefits Begin, and end on the earliest of:
- (1)  the date the Insured Person ceases to be Partially Disabled or dies;
- (2)  the date the Maximum Benefit Period ends;
- (3)  the date the Insured Person earns more than 99% of Basic Weekly Earnings*;
- (4)  the date the Insured Person is able, but chooses not to:
  - (a)  engage in Partial Disability Employment; or
  - (b)  work full-time in his or her regular occupation;
- (5)  the date the Insured Person fails to take a required medical exam, without good cause; or
- (6)  the 60th day after the Company requests additional proof, if not given.

*If the Insured Person's earnings from Partial Disability Employment fluctuate, the Company has the option to average the most recent three weeks' earnings and continue the claim; provided that average does not exceed the percentage of Basic Weekly Earnings allowed above. A Weekly Benefit will not be payable for any week during which earnings exceeded that percentage, however.

The amount of the Weekly Partial Disability Benefit equals the lesser of A or B below:
- (A) (1) the Insured Person's Basic Weekly Earnings multiplied by the Benefit Percentage (limited to the Maximum Weekly Benefit); minus
  - (2) Other Income Benefits, except for earnings the Insured Person receives from Partial Disability Employment.
  - The amount determined under this part A will not be less than the Minimum Weekly Benefit.
- (B) the Insured Person's Basic Weekly Earnings minus Other Income Benefits.

The Day Benefits Begin, Maximum Benefit Period, Benefit Percentage, Maximum Weekly Benefit, Minimum Weekly Benefit and definition of Basic Weekly Earnings are shown in the Schedule of Insurance.

SUCCEEDING PERIODS OF DISABILITY. Two or more periods of Disability will be treated as one period of Disability, unless:
- (1) the Insured Person returns to Active Work on a full-time basis for at least two weeks in a row between periods of Disability; or
- (2) the succeeding period of Disability is due to a Sickness or Injury unrelated to the cause of the prior period of Disability for which benefits were payable.

EXCLUSIONS. Weekly Income Benefits will not be payable for any period of Disability:
- (1) which is the result of an intentionally self-inflicted Injury or suicide attempt;
- (2) during which the Insured Person is not under the regular care of a Physician;
- (3) which is the result of a Sickness or Injury covered by Worker's Compensation;
- (4) which is due to a Sickness or Injury arising out of, or in the course of, any employment for wage or profit;
- (5) during which the Insured Person receives payment under a salary continuance or Retirement Plan sponsored by the Group Policyholder; or
- (6) which is the result of war (declared or undeclared) or any act of war.

ASSIGNMENT. Weekly Income Benefits may not be assigned.

DEFINITIONS.

"Disability" means Total Disability or Partial Disability.

"Full-Time" means the average number of hours the Insured Person was regularly scheduled to work, at his or her regular occupation, during the week just prior to:
- (1) the Day Benefits Begin; or
- (2) the date an approved leave of absence begins, if Disability begins while the Insured Person is continuing coverage during a leave of absence.

"Injury" means bodily Injury which results directly from an accident, independently of all other causes. In determining Weekly Disability Income Benefits, a Disability will be considered due to a Sickness if:
- (1) the Disability begins more than 60 days after the Injury; or
- (2) the Injury occurred before the Insured Person's Effective Date under this Policy.

The term "Injury" shall not include any:
- (1) condition to which a Sickness, its natural progression or its treatment is a substantial contributing cause (based upon the preponderance of medical evidence);
- (2) condition caused by emotional stress or trauma; infection (except pyogenic bacterial infection of an Injury); or medical or surgical treatment (except when needed solely for an Injury);
- (3) repetitive trauma condition which results from repetitious, physically traumatic activities that occur over time; or
- (4) pregnancy; except for complications that result from an Injury.

"Main Duties" or "Material and Substantial Duties" means those job duties which:
    (1)    are normally required to perform the Insured Person's regular occupation; and
    (2)    cannot reasonably be modified or omitted.

It includes those main duties as performed in the general workforce; not as performed for a certain firm or at a certain work site.

"Other Income Benefits" means those benefits shown below:
    (1)    Any disability income benefits for which the Insured Person is eligible under:
        (a)    any compulsory benefit act or law; or
        (b)    any governmental retirement system as a result of the Insured Person's job with the Group Policyholder.
    (2)    Any disability benefits or retirement benefits the Insured Person receives under a Retirement Plan.
    (3)    Benefits under the Social Security Act (or any similar plan or act) including:
        (a)    disability or unreduced retirement benefits for which the Insured Person is eligible; or for which his or her spouse or children are eligible because of the Insured Person's eligibility for unreduced retirement benefits; or
        (b)    reduced retirement benefits received by the Insured Person; or by his or her spouse or children because of the Insured Person's receipt of reduced retirement benefits.
    (4)    Earnings the Insured Person earns or receives from any form of employment.

After the first deduction for each of the Other Income Benefits, the Weekly Total Disability Benefit will not be further reduced due to any cost-of-living increases under these Other Income Benefits (except for increases in earnings from any form of employment). Other Income Benefits paid in a lump sum will be prorated on a weekly basis over the time period for which the sum is given; or over the time the Company expects the Insured Person to live, if no time period is stated.

"Partial Disability" means that, due to Sickness or Injury, the Insured Person is:
    (1)    unable to perform one or more of the main duties of his or her regular occupation; or
    (2)    unable to perform such duties on a full-time basis;
and is engaged in Partial Disability Employment.

"Partial Disability Employment" means the Insured Person is working at his or her own or any other occupation; but, because of a Partial Disability, he or she:
    (1)    is working reduced hours, is producing less, has one or more main job duties reassigned, or is in a lower-paid occupation; and
    (2)    is earning at least 20% but not more than 99% of Basic Weekly Earnings.

"Regular Care of a Physician" means the Insured Person:

   (1)   personally visits a Physician, whose license and any specialty qualify him or her to provide medically appropriate treatment for the Insured Person's disabling condition;

   (2)   is treated as often as medically required, according to standard medical practice, to effectively manage and treat the disabling condition; and

   (3)   receives medically appropriate treatment. Such treatment must be consistent with the disabling condition; and it must be rendered according to generally accepted, professionally recognized standards of medical practice.

"Regular Occupation" or "Own Occupation" means the occupation, trade or profession:

   (1)   in which the Insured Person was employed with the Group Policyholder prior to Disability; and

   (2)   which was his or her primary source of earned income prior to Disability.

It includes any work in the same occupation for pay or profit; whether such work is with the Group Policyholder, with some other firm or on a self-employed basis. It includes the main duties of that occupation as performed in the general workforce; **not** as performed for a certain firm or at a certain work site.

"Retirement Plan" means a defined benefit or defined contribution plan, which provides retirement benefits to Insured Persons and is not funded wholly by Employee contributions. The term includes the Group Policyholder's Retirement Plan; and a plan under any governmental or association retirement system, for which the Employee is eligible as a result of employment with the Employer. It does not include any 401(k), profit-sharing or thrift plan; informal salary continuance plan; individual retirement account (IRA); tax sheltered annuity (TSA); stock ownership plan; or a non-qualified plan of deferred compensation.

"Sickness" means illness or disease. It includes pregnancy and its complications.

"Total Disability" means the Insured Person's inability, due to Sickness or Injury, to perform each of the main duties of his or her regular occupation. A person engaging in any employment for wage or profit is not Totally Disabled. The loss of a professional license, an occupational license or certification, or a driver's license for any reason does **not**, by itself, constitute Total Disability.

AMENDMENT TO BE ATTACHED TO AND MADE PART OF GROUP POLICY NO.: 000010040288

ISSUED TO:  Genesys Conferencing, Inc.

The Policy is amended by the addition of the following provisions.

PRIOR INSURANCE CREDIT UPON TRANSFER OF
DISABILITY INCOME INSURANCE CARRIERS

This provision prevents loss of disability income coverage for an Insured Person, which could otherwise occur solely because of a transfer of insurance carriers.  This Policy will provide the following Prior Insurance Credit, when it replaces a prior plan.

"Prior Plan" means a prior carrier's group disability income policy, which this Policy replaced within 1 day of the prior plan's termination date.

FAILURE TO SATISFY ACTIVE WORK RULE.  Subject to premium payments, this Policy will provide disability income coverage to a Person who:
- (1)    was insured by the prior plan on its termination date; and
- (2)    was otherwise eligible under this Policy; but was not Actively-At-Work due to Injury or Sickness on its Effective Date.

AMOUNT OF COVERAGE.  Until the Person satisfies this Policy's Active Work rule, his or her disability income coverage will not exceed that provided by the prior plan, had it remained in force.  The Company will pay:
- (1)    the benefit the prior plan would have paid; minus
- (2)    any amount for which the prior carrier is liable.

This Amendment takes effect on the effective date of coverage under this Policy.  In all other respects, this Policy remains the same.

**Jefferson Pilot Financial Insurance Company**

_Robert A Reed_

Officer of the Company

AMENDMENT TO BE ATTACHED TO AND MADE A PART OF POLICY NO.:   000010040288

ISSUED TO:  Genesys Conferencing, Inc.


It is agreed that the above policy be amended effective:  September 1, 2002

The Grace Period Section shown on form GL1101-7 96 is amended to read as follows:

A grace period of 60 days from the due date will be allowed for the payment of each premium after the first. The Policy will remain in effect during the grace period; unless the Group Policyholder gives the Company advance written notice of termination.  The Group Policyholder will remain liable for payment of a pro rata premium for the time this Policy remained in force during the grace period.

The provisions and conditions set forth on any page hereof are a part of this amendment as fully as if recited over the signature hereto affixed. Nothing contained in this amendment shall change any of the terms and conditions of this Policy; except as stated above.

**Jefferson Pilot Financial Insurance Company**

_Robert A Reed_

Officer of the Company

GL1100A AMEND.

AMENDMENT NO. 3

TO BE ATTACHED TO AND MADE PART OF GROUP POLICY NO.: 000010040288

ISSUED TO: Genesys Conferencing, Inc.

It is agreed that the above policy be amended by removing policy form GL1101-2 (page 3) and replacing it with policy form GL1101-2 (page 3) dated February 1, 2003.

The effective date of this amendment is February 1, 2003; but only with respect to losses incurred on or after that date. Nothing contained in this amendment shall change any of the terms and conditions of this Policy; except as stated above.

**Jefferson Pilot Financial Insurance Company**

_____
Officer of the Company

GL1100A AMEND.

# Exhibit C



**JEFFERSON PILOT FINANCIAL**

**Jefferson Pilot Financial Insurance Company**
8801 Indian Hills Drive, Omaha NE  68114-4066
(402) 361-7300     A Stock Company

In Consideration of the application for this Policy made by

Genesys Conferencing, Inc.

(herein called the Policyholder)

and the payment of all premiums when due, Jefferson Pilot Financial Insurance Company agrees to make the payments provided in this Policy to the person or persons entitled to them.

Policy No.      000010040289          Policy Effective Date:     January 1, 2002

Monthly Premium:  .17% of Total Covered Payroll per Month

The above rate is guaranteed until January 1, 2004, unless any of the Policy's terms are changed.

Policy Anniversaries will be annually beginning on:  January 1, 2004

The first premium is due on the Policy's Effective Date, and subsequent premiums are due on February 1, 2002, and on the same day of each month thereafter.

The Policy is delivered in the state of Massachusetts and subject to the laws of that jurisdiction.

Jefferson Pilot Financial Insurance Company has executed this Policy at its Home Office in Omaha, Nebraska this 13th day of February, 2003.

Chief Executive Officer                                             Secretary


### GROUP LONG TERM DISABILITY INSURANCE POLICY


GL3001-LTD-1                                            Policy Face Page
                                                       02/01/03

# TABLE OF CONTENTS

Schedule of Benefits .................................................................3

Definitions ...........................................................................4

General Provisions ...................................................................9

Claims Procedures...................................................................11

Eligibility ...........................................................................13

Effective Dates......................................................................13

Individual Termination .............................................................15

Policy Termination .................................................................16

Conversion Privilege................................................................17

Premiums and Premium Rates .....................................................18

Total Disability Monthly Benefit .................................................19

Partial Disability Monthly Benefit................................................20

Other Income Benefits .............................................................22

Recurrent Disability................................................................23

Exclusions ..........................................................................24

Specified Injuries or Sicknesses Limitation......................................25

Voluntary Vocational Rehabilitation Benefit Provision..........................26

Reasonable Accommodation Benefit ..............................................27

Prior Insurance Credit Upon Transfer of Insurance Carriers....................28

Family Income Benefit .............................................................29

Cost-of-Living Adjustment .........................................................30

Genesys Conferencing, Inc.
000010040289

## SCHEDULE OF BENEFITS

ELIGIBLE CLASS means:  Class 1    All Full-Time United States Employees whose Annual Earnings are $40,000 or more

## LONG-TERM DISABILITY BENEFITS

MINIMUM HOURS PER WEEK:  30

BENEFIT PERCENTAGE:   60%

MAXIMUM MONTHLY BENEFIT:   $9,000

MINIMUM MONTHLY BENEFIT:    $100

Long-Term Disability Benefits for PRE-EXISTING CONDITIONS will be subject to the Pre-Existing Condition Exclusion on the Exclusion page.

ELIMINATION PERIOD:  180 days of Disability due to the same or a related Sickness or Injury, which must be accumulated within a 360 day period.

MAXIMUM BENEFIT PERIOD (For Sickness or Injury):  The Insured Employee's Social Security Normal Retirement Age, or the Maximum Benefit Period shown below (whichever is later).

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than Age 60 | To Age 65 |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 and Over | 12 months |

OWN OCCUPATION PERIOD means a period beginning at the end of the Elimination Period and ending at the end of the Maximum Benefit Period for Insured Employees.

WAITING PERIOD:    30 days of continuous Active Work  (For date insurance begins, refer to "Effective Dates" section)

CONTRIBUTIONS:    Insured employees are not required to contribute to the cost of the Long-Term Disability coverage.

COST-OF-LIVING PERCENTAGE:    3% maximum

This Schedule of Benefits is amended effective February 1, 2003, supercedes any prior Schedule of Benefits issued and applies to disabilities commencing on or after such date.

GL3001-LTD-SB

02/01/03

Genesys Conferencing, Inc.
000010040289

## SCHEDULE OF BENEFITS

ELIGIBLE CLASS means:  Class 2    All Other Full-Time United States Employees

## LONG-TERM DISABILITY BENEFITS

MINIMUM HOURS PER WEEK:  30

BENEFIT PERCENTAGE:   60%

MAXIMUM MONTHLY BENEFIT:   $9,000

MINIMUM MONTHLY BENEFIT:    $100

Long-Term Disability Benefits for PRE-EXISTING CONDITIONS will be subject to the Pre-Existing Condition Exclusion on the Exclusion page.

ELIMINATION PERIOD:  180 days of Disability due to the same or a related Sickness or Injury, which must be accumulated within a 360 day period.

MAXIMUM BENEFIT PERIOD (For Sickness or Injury):  The Insured Employee's Social Security Normal Retirement Age, or the Maximum Benefit Period shown below (whichever is later).

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than Age 60 | To Age 65 |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 and Over | 12 months |

OWN OCCUPATION PERIOD means a period beginning at the end of the Elimination Period and ending 24 months later for Insured Employees.

WAITING PERIOD:    30 days of continuous Active Work  (For date insurance begins, refer to "Effective Dates" section)

CONTRIBUTIONS:    Insured employees are not required to contribute to the cost of the Long-Term Disability coverage.

COST-OF-LIVING PERCENTAGE:    3% maximum

This Schedule of Benefits is amended effective February 1, 2003, supercedes any prior Schedule of Benefits issued and applies to disabilities commencing on or after such date.

GL3001-LTD-SB

02/01/03

## DEFINITIONS

As used throughout this Policy, the following terms shall have the meanings indicated below. Other parts of this Policy contain definitions specific to those provisions.

**ACTIVE WORK** or **ACTIVELY-AT-WORK** means an Employee's full-time performance of all main duties of such Employee's occupation at:
1.  the Employer's usual place of business; or
2.  any other business location to which the Employer requires the Employee to travel.

Unless Disabled on the prior workday or on the day of absence, an Employee will be considered Actively at Work on the following days:
1.  a Saturday, Sunday or holiday which is not a scheduled workday;
2.  a paid vacation day or other scheduled or unscheduled non-workday; or
3.  an excused or emergency leave of absence (except a medical leave) of 30 days or less.

**ANNUAL SALARY** means the Insured Employee's Basic Monthly Earnings or Predisability Income multiplied by 12.

**BASIC MONTHLY EARNINGS** or **PREDISABILITY INCOME** means the Insured Employee's average monthly base salary or hourly pay from the Employer before taxes on the determination date. The determination date is the last day worked just prior to the date the Disability begins.

It also includes:
1.  commissions averaged over the 12 months just prior to the determination date or over the actual period of employment with the Employer just prior to that date, if shorter.

It does **not** include bonuses, overtime pay, or any other extra compensation. It does **not** include income from a source other than the Employer. It will not exceed the amount shown in the Employer's financial records, the amount for which premium has been paid, or the maximum covered earnings permitted by this Policy; whichever is less.

**COMPANY** means Jefferson Pilot Financial Insurance Company, a Nebraska corporation, whose Home Office address is 8801 Indian Hills Drive, Omaha, Nebraska 68114.

GL3001-LTD-3 98

02/01/03

## DEFINITIONS
### (continued)

**DAY** or **DATE** means the period of time which begins at 12:01 a.m. and ends at 12:00 midnight, standard time, at the Policyholder's place of business. When used with regard to effective dates, it means 12:01 a.m. When used with regard to termination dates, it means 12:00 midnight.

**DISABLED** or **DISABILITY** means Totally Disabled and/or Partially Disabled.

**DISABILITY BENEFIT** when used with the term Retirement Plan, means a benefit which:
1.  is payable under a Retirement Plan due to disability as defined in that plan; and
2.  does not reduce the benefits which would have been paid as Retirement Benefits at the normal retirement age under the plan if the disability had not occurred.

If the payment of the benefit does cause such a reduction, the benefit will be deemed a Retirement Benefit as defined in this Policy.

**ELIGIBILITY WAITING PERIOD** means the period of time that:
1.  begins with an Employee's most recent date of employment with the Employer; and
2.  ends on the day prior to the day such Employee is eligible for coverage under this Policy.

**ELIMINATION PERIOD** means the number of days of Disability during which no benefit is payable. The Elimination Period is shown in the Schedule of Benefits. It applies as follows.
1.  The Elimination Period:
    (a)  begins on the first day of Disability; and
    (b)  is satisfied when the required number of days is accumulated within a period which does not exceed two times the Elimination Period.

    During a period of Disability, the Insured Employee may return to full-time work, at his or her own or any other occupation, for an accumulated number of days not to exceed the Elimination Period.
2.  Only days of Disability due to the same or a related Sickness or Injury will count towards the Elimination Period. Days on which the Insured Employee returns to full-time work will not count towards the Elimination Period.

**EMPLOYEE** means a person:
1.  whose employment with the Employer is:
    (a)  on a regular full-time basis;
    (b)  the person's principal occupation; and
    (c)  for regular wage or salary;
2.  who is regularly scheduled to work at such occupation at least the minimum number of hours shown in the Schedule of Benefits; and
3.  who is a member of an Eligible Class which is eligible for coverage under this Policy;
4.  who is not a temporary or seasonal employee; and
5.  who is a citizen of the United States or legally works in the United States.

**EMPLOYER** means the Policyholder and includes any division, subsidiary or affiliated company named in the Application.

**EVIDENCE OF INSURABILITY** means a statement of proof of an Employee's medical history. The Company uses this to determine his or her acceptance for insurance, or for an increased amount of insurance. Such proof will be provided at the Employee's own expense.

GL3001-LTD-3A 98

Residual Partial
02/01/03

## DEFINITIONS
### (continued)

**FAMILY OR MEDICAL LEAVE** means a leave of absence which is approved in writing by the Employer; and which is subject to:
1.  the federal Family and Medical Leave Act of 1993, and any amendments to it; or
2.  any similar state law requiring the Employer to grant family or medical leaves.

**INSURED EMPLOYEE** means an Employee for whom Policy coverage is in effect.

**INJURY** means bodily injury which is caused by and results directly from an accident, independently of all other causes.  For purposes of determining benefits under this Policy, a Disability will be considered due to an Injury only if:
1.  the Disability begins within 90 days after the Injury; or
2.  the Injury occurred while the Employee was insured under this Policy.

The term "Injury" shall **not** include any:
1.  condition to which a physical or mental sickness, the natural progression of a sickness, or the treatment of a sickness is a substantial contributing factor (based upon the preponderance of medical evidence);
2.  condition caused solely by emotional stress or mental trauma;
3.  repetitive trauma condition which results from repetitious, physically traumatic activities that occur over time;
4.  pregnancy; except for complications which result from a covered Injury;
5.  condition caused by infection; except pyogenic bacterial infection of a covered Injury; or
6.  condition caused by medical or surgical treatment; except when the treatment is needed solely because of a covered Injury.

GL3001-LTD-4 98

6

## DEFINITIONS
### (continued)

**MAIN DUTIES** or **MATERIAL AND SUBSTANTIAL DUTIES** means those job duties which:
1.   are normally required to perform the Insured Person's regular occupation; and
2.   cannot reasonably be modified or omitted.

It includes those main duties as performed in the national workforce; **not** as performed for a certain firm or at a certain work site.

**MEDICALLY APPROPRIATE TREATMENT** means diagnostic services, consultation, care or services which are consistent with the symptoms or diagnosis causing the Insured Employee's Disability.   Such treatment must be rendered:
1.   by a Physician whose license and any specialty are consistent with the disabling condition; and
2.   according to generally accepted, professionally recognized standards of medical practice.

**MONTHLY BENEFIT** means the amount payable monthly by the Company to the Insured Employee who is Totally or Partially Disabled.

**OWN OCCUPATION PERIOD** means a period as shown in the Schedule of Benefits.

**PARTIALLY DISABLED** or **PARTIAL DISABILITY** shall be as defined in the Partial Disability Monthly Benefit sections.

**PARTIAL DISABILITY EMPLOYMENT** means the Insured Employee is working at his or her own or any other occupation; but because of a Partial Disability:
1.   the Insured Employee's hours or production is reduced;
2.   one or more main duties of the job are reassigned; or
3.   the Insured Employee is working in a lower-paid occupation.

His or her current earnings must be at least 20% of Predisability Income, and may not exceed the percentage specified in the Partial Disability Benefit section.

**PHYSICIAN** means:
1.   a legally qualified medical doctor who is licensed to practice medicine, to prescribe and administer drugs, or to perform surgery; or
2.   any other duly licensed medical practitioner who is deemed by state law to be the same as a legally qualified medical doctor.

The medical doctor or other medical practitioner must be acting within the scope of his or her license; and must be qualified to provide medically appropriate treatment for the Insured Employee's disabling condition.

Physician does **not** include the Insured Employee or a relative of the Insured Employee receiving treatment. (Relatives include the Insured Employee's spouse, siblings, parents, children and grandparents; and his or her spouse's relatives of like degree.)

**POLICY** means this Group Long Term Disability Insurance Policy issued by the Company to the Policyholder.

**POLICYHOLDER** means the person, individual, firm, trust or other organization as shown on the Face Page of this Policy.

**PREDISABILITY INCOME** - See Basic Monthly Earnings.

GL3001-LTD-5 98

02/01/03

## DEFINITIONS
### (continued)

**REGULAR CARE OF A PHYSICIAN** or **REGULAR ATTENDANCE OF A PHYSICIAN** means the Insured Employee:
1. personally visits a Physician, as often as medically required according to standard medical practice to effectively manage and treat his or her disabling condition; and
2. receives medically appropriate treatment, by a Physician whose license and any specialty are consistent with the disabling condition.

**REGULAR OCCUPATION** or **OWN OCCUPATION** means the occupation, trade or profession:
1. in which the Insured Employee was employed with the Employer prior to Disability; and
2. which was his or her primary source of earned income prior to Disability.

It includes any work in the same occupation for pay or profit; whether such work is with the Employer, with some other firm or on a self-employed basis. It includes the main duties of that occupation as performed in the national workforce; **not** as performed for a certain firm or at a certain work site.

**RETIREMENT BENEFIT** when used with the term Retirement Plan, means a benefit which:
1. is payable under a Retirement Plan either in a lump sum or in the form of periodic payments;
2. does not represent contributions made by an Employee (payments which represent Employee contributions are deemed to be received over the Employee's expected remaining life regardless of when such payments are actually received); and
3. is payable upon:
   (a) early or normal retirement; or
   (b) disability, if the payment does reduce the benefit which would have been paid at the normal retirement age under the plan, if disability had not occurred.

**RETIREMENT PLAN** means a defined benefit or defined contribution plan which provides Retirement Benefits to Employees and which is not funded wholly by Employee contributions. The term shall **not** include any 401(k), profit-sharing or thrift plan; informal salary continuance plan; individual retirement account (IRA); tax sheltered annuity (TSA); stock ownership plan; or a non-qualified plan of deferred compensation. An Employer's Retirement Plan is deemed to include any Retirement Plan:
1. which is part of any federal, state, county, municipal or association retirement system; and
2. for which the Employee is eligible as a result of employment with the Employer.

**SICK LEAVE** or **ANY SALARY CONTINUANCE PLAN** means a plan which:
1. is established and maintained by the Employer for the benefit of Insured Employees; and
2. continues payment of all or part of an Insured Employee's Predisability Income for a specified period after he or she becomes Disabled.

It does **not** include compensation the Employer pays an Insured Employee for work actually performed during a Disability.

**SICKNESS** means illness, pregnancy or disease.

**TOTAL COVERED PAYROLL** means the total amount of Basic Monthly Earnings for all Employees insured under this Policy.

**TOTAL DISABILITY** or **TOTALLY DISABLED** shall be defined in the Total Disability Monthly Benefit section.

GL3001-LTD-6 98

02/01/03

## GENERAL PROVISIONS

**ENTIRE CONTRACT.** The entire contract between the parties shall consist of:
1.  this Policy and the Application (a copy of which is attached);
2.  the Employer's Participation Agreement, if any; and
3.  the Insured Employee's enrollment forms, if any.

In the absence of fraud, all statements made by the Policyholder and by Insured Employees are representations and not warranties. No statement made by an Insured Employee will be used to contest the coverage provided by this Policy; unless a copy of the statement has been furnished to such Insured Employee.

**AUTHORITY TO MAKE OR AMEND CONTRACT.** Only a Company Officer located in the Company's Home Office has the authority to:
1.  determine the insurability of a group or any individual within a group;
2.  make a contract in the Company's name;
3.  amend or waive any provision of this Policy; or
4.  extend the time for payment of any premium.

No change in this Policy will be valid; unless it is made in writing and signed by such a Company Officer.

**INCONTESTABILITY.** Except for the non-payment of premiums or fraud, the Company may not contest the validity of this Policy as to any Insured Employee, after it has been in force for two years during his or her lifetime.

**RESCISSION.** The Company has the right to rescind any insurance for which evidence of insurability was required, if:
1.  an Insured Employee incurs a claim during the first two years of coverage; and
2.  the Company discovers that the Insured Employee made a material misrepresentation on his or her enrollment form.

A material misrepresentation is an incomplete or untrue statement that caused the Company to issue coverage which it would have disapproved, had it known the truth. To rescind means to cancel insurance back to its effective date. In that event, the Company will refund all premium paid for the rescinded insurance, less any benefits paid for the Insured Employee's Disability. The Company reserves the right to recover any claims paid in excess of such premiums.

**NON-PARTICIPATION.** This is a non-participating Policy. It will not share in the divisible surplus of the Company.

**INFORMATION TO BE FURNISHED.** The Employer is required to furnish the Company any information needed to administer this Policy, including:
1.  information about Employees who become eligible for insurance; whose amounts of coverage change; and whose eligibility or coverage ends;
2.  occupational information and other facts that may be needed to manage a claim; and
3.  any other information that the Company may reasonably require.

The Company may inspect any of the Employer's records which relate to this Policy, at any reasonable time.

Clerical error by the Employer:
1.  will not affect insurance which otherwise would be in effect; and
2.  will not continue insurance which otherwise would be terminated.

Once an error is discovered, an equitable adjustment in premium will be made. If a premium adjustment involves the return of unearned premium, the amount of the return will be limited to the 12-month period which precedes the date the Company receives proof that such an adjustment should be made.

GL3001-LTD-7 98

02/01/03

## GENERAL PROVISIONS
### (continued)

MISSTATEMENTS OF FACTS.  If relevant facts about any person were misstated:
1.   a fair adjustment of the premium will be made; and
2.   the true facts will decide if and in what amount insurance is valid under this Policy.
If an Insured Employee's age has been misstated; then any benefits shall be in the amount the paid premium would have purchased at the correct age.

ACTS OF THE POLICYHOLDER.  In administering this Policy, the Policyholder must:
1.   treat Employees the same in like situations; and
2.   allow the Company, without inquiry, to rely on its acts.

POLICYHOLDER'S AGENCY.  For all purposes of this Policy, the Policyholder acts on its own behalf or as Agent of the Employee.  Under no circumstances will the Policyholder be deemed the Agent of the Company.

COMPANY'S DISCRETIONARY AUTHORITY.  Except for those functions which this Policy specifically reserves to the Policyholder or Employer, the Company has sole authority to manage this Policy, to administer claims, to interpret Policy provisions, and to resolve questions arising under this Policy.  The Company's authority includes (but is not limited to) the right to:
1.   establish and enforce procedures for administering this Policy and claims under it;
2.   determine Employees' eligibility for insurance and entitlement to benefits;
3.   determine what information the Company reasonably requires to make such decisions; and
4.   resolve all matters when a claim review is requested.
Any decision the Company makes in the exercise of its authority shall be conclusive and binding.

CERTIFICATES.  The Employer will be furnished with individual Certificates for delivery to each Insured Employee.  These Certificates summarize the benefits provided by this Policy.  If there is a conflict between this Policy and the Certificate, this Policy will control.

CONFORMITY WITH STATE STATUTES.  If, on its effective date, any provision of this Policy conflicts with any applicable law; then the provision will be deemed to conform to the minimum requirements of the law.

CURRENCY.  In administering this Policy, all Predisability Income will be expressed in U.S. dollars; and all premium and benefit amounts must be paid in U.S. dollars.

WORKERS' COMPENSATION OR STATE DISABILITY INSURANCE.  This Policy does not replace or provide benefits required by Workers' Compensation laws or any state disability insurance plan laws.

ASSIGNMENT.  The rights and benefits under this Policy may not be assigned.

GL3001-LTD-7 98

02/01/03

## CLAIMS PROCEDURES

NOTICE OF CLAIM. Written notice of claim must be given during the Elimination Period. The notice must be sent to the Company's Home Office. It should include:
1. the Insured Employee's name and address; and
2. the number of this Policy.
If this is not possible, written notice must be given as soon as it is reasonably possible.

CLAIM FORMS. When notice of claim is received, the Company will send claim forms to the Insured Employee. If the Company does not send the forms within 15 days; then the Insured Employee may send the Company written proof of Disability in a letter stating the date the Disability started, its cause and degree. The Company will periodically send the Insured Employee additional Claim Forms.

PROOF OF CLAIM. The Company must be given written proof of claim within 90 days after the end of the Elimination Period. If it was not reasonably possible to give written proof in the time required, the claim will not be reduced or denied solely for this reason; provided the proof is filed as soon as reasonably possible. In any event, proof of claim must be given no later than one year from such time. These time limits will not apply while an Insured Employee lacks legal capacity, however.

Proof of claim must be provided at the Insured Employee's own expense. It must show the date the Disability started, its cause and degree. It must show any restrictions on performing the duties of the Insured Employee's regular occupation. Documentation must include:
1. completed statements by the Insured Employee, the Employer and the attending Physician;
2. a signed authorization for the Company to obtain more information; and
3. any other items the Company may reasonably require in support of the claim.
Proof of continued Disability and regular attendance of a Physician must be given to the Company, within 60 days after the Company requests it; if it is not, benefits may be denied or suspended.

EXAM OR AUTOPSY. At anytime while a claim is pending, the Company may:
1. have the Insured Employee examined by a Physician, specialist or vocational rehabilitation expert of the Company's choice, as often as reasonably required; and
2. deny or suspend benefits for an Insured Employee who fails to attend an exam, without good cause; or who fails to cooperate with the examiner.
The Company may also have an autopsy done, where it is not forbidden by law. Any such exam or autopsy will be at the Company's expense.

TIME OF PAYMENT OF CLAIMS. When the Company receives proof of claim, benefits payable under this Policy will be paid as follows.
1. Any Long Term Disability benefits will be paid monthly, during any period for which the Company is liable. If benefits are due for less than a month, they will be paid on a prorata basis. The daily rate will equal 1/30 of the monthly benefit.
2. Any balance which remains unpaid at the end of the period of liability will be paid immediately upon receipt of due written proof.

TO WHOM PAYABLE. All benefits are payable to the Insured Employee; except after his or her death benefits will be payable as follows.
1. Any Survivor Benefit will be payable in accord with that Policy provision.
2. Any other benefits will be payable to the Insured Employee's estate.

When a benefit becomes payable to the Insured Employee's estate, a minor or any other person who is not legally competent to give a valid receipt; then up to $2,000 may be paid to any relative of the Insured Employee that the Company finds entitled to payment. If payment is made in good faith to such a relative, the Company will not have to pay that benefit again.

NOTICE OF CLAIM DECISION. Within a reasonable time after receiving proof of loss, the Company will send the Insured Employee a written notice of their claim decision. If the Company denies any part of the claim, the written notice will:
1. explain the reason for the denial under the terms of this Policy; and
2. inform the Insured Employee of the right to a review of the Company's decision.
If the Insured Employee does not receive a written decision within 90 days after the Company receives his or her claim; then the Insured Employee has a right to an immediate review, as if the claim was denied.

GL3001-LTD-8 98

02/01/03

## CLAIMS PROCEDURES
### (continued)

REVIEW PROCEDURE.  Within 60 days after receiving a denial notice, the Insured Employee may request a claim review by sending the Company a written request, along with any written comments or other items to support the claim.  The Insured Employee may review certain non-privileged information relating to the request for review.

The Company will review the claim and send the Insured Employee a written notice of their decision within 60 days after receiving the request for review; or within 120 days, if special circumstances require an extension.  The notice will state the reasons for the Company's decision under the terms of this Policy.

RIGHT OF RECOVERY.  If benefits have been overpaid on any claim, full reimbursement to the Company is required within 60 days.  If reimbursement is not made, the Company has the right to:
1.    reduce future benefits until full reimbursement is made; and
2.    recover such overpayments from the Insured Employee or his or her estate.

Such reimbursement is required whether the overpayment is due to fraud, the Company's error in processing a claim, the Insured Employee's receipt of Other Income Benefits, or any other reason.

LEGAL ACTIONS.  No legal action to recover any benefits may be brought until sixty days after the required written proof of claim has been given.  No legal action may be brought more than three years after written proof of claim is required to be given.

GL3001-LTD-8 98

02/01/03

## ELIGIBILITY

**ELIGIBLE CLASSES.**  The classes of Employees eligible for insurance are shown in the Schedule of Benefits.  The Company has the right to review and terminate any or all classes eligible under this Policy, if any class ceases to be covered by this Policy.

**ELIGIBILITY DATE.**  An Employee becomes eligible for coverage provided by this Policy on the later of:
1.    the Policy's effective date; or
2.    the date the Employee satisfies the Waiting Period.

Prior service in an Eligible Class will apply toward the Waiting Period, when:
1.    a former Employee is rehired within one year after his or her employment ends; or
2.    an Employee returns from a Family or Medical Leave within the leave period required by federal or state law (whichever is greater).

## EFFECTIVE DATES

**EFFECTIVE DATE.**  Except as stated in the Delayed Effective Date provision, coverage for an Employee becomes effective at 12:01 a.m. on the latest of:
1.    the first day of the Insurance Month coinciding with or next following the date the Employee becomes eligible for coverage;
2.    the date the Employee makes written application for coverage; and signs:
   (a)    a payroll deduction order, if the Employees pay any part of the Policy premiums; or
   (b)    an order to pay premiums from the Employee's Flexible Benefits Plan account, if premiums are paid through such an account; or
3.    the date the Company approves the Employee's evidence of insurability, if required.

Evidence of insurability satisfactory to the Company must be submitted (at the Employee's expense) if:
1.    written application for coverage (or an increased amount of coverage) is made more than 31 days after the Employee becomes eligible for such coverage;
2.    coverage is elected after the Employee has requested:
   (a)    to terminate the insurance;
   (b)    to stop payroll deductions for the insurance; or
   (c)    to stop premium payments through a Flexible Benefits Plan account;
3.    coverage is elected after the Employee has caused insurance to lapse by failing to pay the required premium when due; or
4.    ' optional, supplemental, voluntary or Buy-Up Benefit coverage is elected in excess of any guaranteed issue amounts shown in the Schedule of Benefits.

**DELAYED EFFECTIVE DATE.**  An Employee's Effective Date of any initial, increased or additional coverage will be delayed; if such Employee is not Actively-at-Work on the date that coverage would otherwise be effective.  Coverage will take effect on the Employee's second consecutive day of Active Work.

GL3001-LTD-9 94

02/01/03

EFFECTIVE DATE FOR CHANGE IN ELIGIBLE CLASS. An Insured Employee may become a member of a different Eligible Class. Except as stated in the Delayed Effective Date provision, coverage under the different Eligible Class will be effective:

1. immediately, if the different Eligible Class involves any reduction in coverage; or
2. the first day of the month after the Insured Employee has been Actively-at-Work for at least 15 days, as a member of a different Eligible Class; if the different Eligible Class involves enhancement of any coverage.

REINSTATEMENT AFTER FAMILY OR MEDICAL LEAVE. A new Waiting Period and evidence of insurability will be waived for an Employee, upon return from an approved Family or Medical Leave, provided:

1. the Employee returns within the leave period required by federal or state law (whichever is greater);
2. the Employee applies for insurance or is enrolled under this Policy within 31 days after resuming Active Work; and
3. the reinstated amount of insurance does not exceed the amount which terminated.

If the above conditions are met, the months of leave will count towards any unmet Pre-Existing Condition Exclusion period; and a new Pre-Existing Condition Exclusion will not apply to the reinstated amount of insurance. A new Pre-Existing Condition Exclusion will apply to any increased amount of insurance, however.

GL3001-LTD-9 94

02/01/03

## INDIVIDUAL TERMINATION

INDIVIDUAL TERMINATION OF COVERAGE.  An Insured Employee's coverage will terminate at 12:00 midnight on the earliest of:

1. the date this Policy or the Employer's participation terminates; but without prejudice to any claim incurred prior to termination;
2. the date the Insured Employee's Class is no longer eligible for insurance;
3. the date such Insured Employee ceases to be a member of an Eligible Class;
4. the end of the period for which the last required premium has been paid; or
5. the date on which the Insured Employee's employment with the Employer terminates; unless coverage is continued as provided below.

CONTINUATION.  Ceasing Active Work is deemed termination of employment; but insurance may be continued as follows.

1. **Ceasing Active Work**.  If the Insured Employee ceases Active Work, and does not become eligible for similar group disability income coverage within 31 days after employment ends; then coverage may be continued:
   (a)  for 31 days;
   (b)  provided the Company receives the required premium from the Employer.

2. **Disability**.  If an Insured Employee is absent due to Total Disability, or is engaged in Partial Disability Employment; then Long Term Disability insurance may be continued during:
   (a)  the Elimination Period; provided the Company receives the required premium from the Employer; and
   (b)  the period for which Long Term Disability benefits are payable, without payment of premium.

3. **Family or Medical Leave**.  If an Insured Employee goes on an approved Family or Medical Leave, and is not entitled to continue insurance due to Disability, as provided above; then Long Term Disability insurance may be continued, until the earliest of:
   (a)  the end of the leave period approved by the Employer;
   (b)  the end of the leave period required by federal or state law (whichever is greater);
   (c)  the date the Insured Employee notifies the Employer that he or she will not return; or
   (d)  the date the Insured Employee begins employment with another employer;
   provided the Company receives the required premium from the Employer.

4. **Lay-off or Other Leave**.  When an Insured Employee goes on a temporary lay-off, or an approved leave of absence which is not subject to the federal Family and Medical Leave Act (or any similar state law); then Long Term Disability insurance may be continued:
   (a)  until the end of the calendar month following the month in which the lay-off or leave began;
   (b)  provided the Company receives the required premium from the Employer.

5. **Plant Closing**.  When an Insured Employee ceases Active Work due to a plant closing or partial closing (as defined by Massachusetts law); then insurance may be continued:
   (a)  for 90 days after the closing; or
   (b)  until he or she becomes eligible for similar group disability income coverage (whichever occurs first);
   provided the Company receives the required premium from the Employer.

When an Insured Employee is entitled to continue coverage in accord with two provisions shown above, he or she may elect the longer continuation period (but not both).

The Employer must not act so as to discriminate unfairly among Employees in similar situations.  Insurance may not be continued when an Insured Employee ceases Active Work due to a labor dispute, strike, work slowdown or lockout.

INDIVIDUAL TERMINATION DURING DISABILITY.  Termination of an Insured Employee's coverage during a Disability will have no effect on benefits payable for that period of Disability.

GL3001-LTD-10 98 MA

02/01/03

## POLICY TERMINATION

**POLICY TERMINATION BY THE COMPANY.** Until the premium rate has been in effect for at least 12 months, or any later Rate Guarantee Date agreed upon by the Company; the Company may terminate this Policy on the due date of any premium if:

1. the number of Insured Employees totals less than 10;
2. part of the premium is paid by the Insured Employee and less than 75% of those eligible for coverage are insured;
3. all of the premium is paid by the Policyholder and less than 100% of those eligible for coverage are insured;
4. the Policyholder fails to promptly furnish any information which the Company may reasonably require;
5. the Policyholder, without good cause, fails to perform its duties pertaining to this Policy in good faith;
6. the Company's liability is changed as a result of any change in federal, state or local law which affects this Policy;
7. the Policyholder or any covered division, subsidiary or affiliated company relocates;
8. the Policyholder or any covered subsidiary or affiliated company dissolves or merges;
9. a division, subsidiary or affiliated company is added to or removed from this Policy;
10. any coverage for one or more classes of Insured Employees ceases to be provided under this Policy;
11. the number of Insured Employees changes by 25% or more from the number of Insured Employees on the date this Policy took effect, or the most recent Rate Guarantee Date expired, if later; or
12. the Employer ceases to be covered under the state Workers' Compensation program or any other program of like intent.

After the premium rate has been in effect for at least 12 months, or any later Rate Guarantee Date agreed upon by the Company; the Company may terminate this Policy on the due date of any premium. Such termination may be with respect to the Policy as a whole, to any coverage(s) provided under it, or to any class of Insured Employees covered under it.

The Company will give the Policyholder at least 31 days' advance written notice of its intent to terminate this Policy.

**POLICY TERMINATION BY THE POLICYHOLDER.** The Policyholder may terminate this Policy at any time by giving the Company written notice. This Policy will then terminate on:

1. the date the Company receives the notice; or
2. some later date on which the Policyholder and the Company have agreed.

However, termination will not become effective during any period for which premium has been paid to the Company. The Policyholder remains liable for the payment of premiums to the date of termination.

**AUTOMATIC POLICY TERMINATION.** If any premium is not paid before the end of the Grace Period; then this Policy will terminate at the end of the Grace Period, without any action on the Company's part. The Policyholder remains liable for the payment of premiums to the date of termination.

**POLICY TERMINATION DURING DISABILITY.** Termination of this Policy or an Employer's participation during a Disability shall have no effect on benefits payable to the Insured Employee for that period of Disability.

GL3001-LTD-10 98 MA

02/01/03

## CONVERSION PRIVILEGE

ELIGIBILITY. This Policy provides a conversion privilege, when an Insured Employee's insurance under this Policy ends because he or she:
1.   resigns from employment with the Employer;
2.   is terminated from employment with the Employer, with or without cause;
3.   goes on a lay-off or leave of absence; or
4.   remains on a lay-off or leave of absence beyond the continuation period provided in the Individual Termination section of this Policy.

The Insured Employee may obtain converted long term disability insurance, without medical evidence of insurability. To be eligible for a converted policy, the Insured Employee must have been insured under the Employer's group plan for at least 12 months in a row, just before his or her insurance under this Policy terminated. The 12 months can be a combination of coverages under this Policy, and under any prior group long term disability plan which this Policy replaces.

APPLICATION. Application to convert must be made within 31 days after insurance under this Policy terminates. The converted benefits and amount of insurance may differ from those under this Policy.

CONDITIONS AND LIMITATIONS. This conversion privilege is not available to any Insured Employee whose insurance terminates because:
1.   this Policy is terminated by the Employer or the Company;
2.   this Policy is amended to exclude the class to which the Insured Employee belongs:
3.   the Insured Employee no longer belongs to a class eligible for coverage under this Policy;
4.   the Insured Employee retires or dies;
5.   the Insured Employee fails to pay the required premium; or
6.   the Insured Employee is Disabled under the terms of this Policy.

Also, this conversion privilege is not available to an Insured Employee who becomes insured for long term disability benefits under any other group plan; unless the other coverage takes effect more than 31 days after his or her insurance under this Policy terminates.

If an Insured Employee converts his or her Policy coverage, and later resumes active employment in an eligible class; then the Insured Employee's conversion coverage will terminate on the day before he or she is re-enrolled under this Policy. In no event will benefits be paid under both this Policy and the conversion coverage for the same period of Disability.

Conversion Privilege

GL3001-LTD-10.1

02/01/03

## PREMIUMS AND PREMIUM RATES

**PAYMENT OF PREMIUM.** No coverage provided by this Policy will be in effect until the first premium for such coverage is paid. For coverage to remain in effect, the Employer must pay each subsequent premium on or before its due date at the Company's Home Office. The premium must be paid in U.S. dollars.

**PREMIUM RATES.** The initial premium rates for this Policy are shown on the Face Page of this Policy. Premium rates are subject to change.

**PREMIUM RATE CHANGE.** The Company may change any premium rate:
1. when this Policy's terms are changed:
   (a)  as agreed upon by the Policyholder and the Company; or
   (b)  as a result of a change in federal, state or local law which affects this Policy;
2. when the Company's liability is changed as a result of a change in federal, state, or local law;
3. when the Policyholder or any covered division, subsidiary or affiliated company relocates;
4. when a division, subsidiary, or affiliated company is added to or removed from this Policy;
5. when the number of Insured Employees changes by 25% or more from the number of Insured Employees on the date this Policy took effect or the most recent Rate Guarantee Date expired, if later;
6. when the Employer ceases to be covered by the state Workers' Compensation program or any other program of like intent; or
7. on any premium due date on or after:
   (a)  this Policy's first anniversary; or
   (b)  any later Rate Guarantee Date agreed upon by the Company.

Unless the Company and the Group Policyholder agree otherwise, the Company will give at least 31 days' advance written notice of any increase in premium rates.

**MONTHLY PREMIUM AMOUNT.** The amount of monthly premium due on each due date will be the Total Covered Payroll multiplied by the premium rate. Changes will not be pro-rated daily. Instead, premium will be adjusted as follows.
1. When an Insured Employee's insurance (or increased amount of insurance) takes effect, premium will be charged from the monthly due date coinciding with or next following that change.
2. When all or part of an Insured Employee's insurance terminates, the applicable premium will cease on the monthly due date coinciding with or next following that termination.
3. When premiums are paid other than monthly, increases or decreases will result in an adjustment from the premium due date coinciding with or next following that change.

The above manner of charging premium is for accounting purposes only. It will not extend insurance coverage beyond a date it would have otherwise terminated.

Each premium payment will include any adjustments in past premiums, which are needed due to changes that have not yet been taken into account. If a premium adjustment involves a return of unearned premium, the amount of the return will be limited to the prior 12-month period.

**GRACE PERIOD.** A Grace Period of 31 days from the due date will be allowed for the payment of each premium after the first. This Policy will remain in effect during the Grace Period. The Policyholder will be liable to the Company for the payment of all premiums due for the period this Policy remains in effect, however.

**WAIVER OF PREMIUM.** Premium will be administered as follows during any period for which benefits are payable.
1. Long Term Disability premium payments are waived for an Insured Employee who is Disabled, during any period for which benefits are payable.
2. If coverage is to be continued following a period during which premiums were waived; then premium payments must be resumed, as they become due.

GL3001-LTD-11 98

02/01/03

## TOTAL DISABILITY MONTHLY BENEFIT

BENEFIT.  The Company will pay a Total Disability Monthly Benefit to an Insured Employee, after the completion of the Elimination Period; if he or she:
1.    is Totally Disabled;
2.    is under the regular care of a Physician; and
3.    at his or her own expense, submits proof of continued Total Disability and Physician's care to the Company upon request.

The Total Disability Monthly Benefit will cease on the earliest of:
1.    the date the Insured Employee ceases to be Totally Disabled or dies;
2.    the date the Maximum Benefit Period ends;
3.    the date the Insured Employee is able, but chooses not to engage in Partial Disability Employment:
    (a)    in his or her regular occupation, during the Own Occupation Period; or
    (b)    in any gainful occupation, after the Own Occupation Period;
4.    the date the Insured Employee fails to take a required medical exam, without good cause; or
5.    the 60th day after the Company mails a request for additional proof, if not given.

AMOUNT.  The amount of the Total Disability Monthly Benefit equals:
1.    the Insured Employee's Basic Monthly Earnings multiplied by the Benefit Percentage (limited to the Maximum Monthly Benefit); minus
2.    Other Income Benefits.

The amount of the Total Disability Monthly Benefit will not be less than the Minimum Monthly Benefit. The Benefit Percentage, Maximum Monthly Benefit, Minimum Monthly Benefit and Maximum Benefit Period are shown in the Schedule of Benefits.

## DEFINITION

**"Total Disability" or "Totally Disabled"** will be defined as follows.
1.    During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the main duties of his or her regular occupation.
2.    After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the main duties of any gainful occupation which his or her training, education or experience will reasonably allow.
The loss of a professional license, an occupational license or certification, or a driver's license for any reason does **not**, by itself, constitute Total Disability.

## PARTIAL DISABILITY MONTHLY BENEFIT

**BENEFIT.** The Company will pay a Partial Disability Monthly Benefit to an Insured Employee, after completion of the Elimination Period; if he or she:
1. is Disabled;
2. is engaged in Partial Disability Employment;
3. is earning at least 20% of Predisability Income when Partial Disability Employment begins;
4. is under the regular care of a Physician; and
5. at his or her own expense, submits proof of continued Partial Disability, Physician's care and reduced earnings to the Company upon request.

The Insured Employee does not have to be Totally Disabled prior to receiving Partial Disability Monthly Benefits. The Elimination Period may be satisfied by days of Total Disability, Partial Disability or any combination thereof.

The Partial Disability Monthly Benefit will cease on the earliest of:
1. the date the Insured Employee ceases to be Partially Disabled or dies;
2. the date the Maximum Benefit Period ends;
3. the date the Insured Employee earns more than:
   - (a) 99% of Predisability Income, until Partial Disability Monthly Benefits have been paid for 24 months for the same period of Disability; or
   - (b) 85% of Predisability Income, after Partial Disability Monthly Benefits have been paid for 24 months for the same period of Disability;*
4. the date the Insured Employee is able, but chooses not to work full-time:
   - (a) in his or her regular occupation, during the Own Occupation Period; or
   - (b) in any gainful occupation, after the Own Occupation Period;
5. the date the Insured Employee fails to take a required medical exam, without good cause; or
6. the 60th day after the Company mails a request for additional proof, if not given.

*If the Insured Employee's earnings from Partial Disability Employment fluctuate, the Company has the option to average the most recent three months' earnings and continue the claim; provided that average does not exceed the percentage of Predisability Income allowed above. A Monthly Benefit will not be payable for any month during which earnings exceeded that percentage, however.

## DEFINITIONS

**"Full-Time"** means the average number of hours the Insured Employee was regularly scheduled to work, at his or her regular occupation, during the month just prior to:
1. the date the Elimination Period begins; or
2. the date an approved leave of absence begins, if the Elimination Period begins while the Insured Employee is continuing coverage during a leave of absence.

**"Partially Disabled"** or **"Partial Disability"** will be defined as follows.
1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee:
   - (a) is unable to perform one or more of the main duties of his or her regular occupation, or is unable to perform such duties full-time; and
   - (b) is engaged in Partial Disability Employment.
2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee:
   - (a) is unable to perform one or more of the main duties of any gainful occupation which his or her training, education or experience will reasonably allow; or is unable to perform such duties full-time; and
   - (b) is engaged in Partial Disability Employment.

## PARTIAL DISABILITY MONTHLY BENEFIT
### (Continued)

BENEFIT AMOUNT.  The Partial Disability Monthly Benefit will replace the Insured Employee's Lost Income; provided it does not exceed the Total Disability Monthly Benefit, which would otherwise be payable during Total Disability without the Partial Disability Employment.

Thus, the amount of the Partial Disability Monthly Benefit will equal the lesser of A or B below.

A.    LOST INCOME:  The Insured Employee's Predisability Income, minus all Other Income Benefits (including earnings from Partial Disability Employment).

B.    TOTAL DISABILITY MONTHLY BENEFIT otherwise payable:
   1.    The Insured Employee's Predisability Income multiplied by the Benefit Percentage (limited to the Maximum Monthly Benefit); minus
   2.    Other Income Benefits, except for earnings from Partial Disability Employment.

The Partial Disability Monthly Benefit will never be less than the Minimum Monthly Benefit.  The Benefit Percentage, Maximum Monthly Benefit, Minimum Monthly Benefit, and Maximum Benefit Period are shown in the Schedule of Benefits.

Progressive Calculation

GL3001-LTD-13.4

02/01/03

## OTHER INCOME BENEFITS

OTHER INCOME BENEFITS means those benefits shown below:
1.  Any temporary or permanent benefits or awards for which the Insured Employee is eligible under:
    (a)  Worker's or Workmen's Compensation Law;
    (b)  occupational disease law; or
    (c)  any other act or law of like intent.
2.  Any disability income benefits for which the Insured Employee is eligible under any compulsory benefit act or law.
3.  Any disability income benefits for which the Insured Employee is eligible under:
    (a)  any other group plan, sick leave or salary continuance plan of the Employer; or
    (b)  any governmental retirement system as a result of the Insured Employee's job with the Employer.
4.  Any Disability Benefits or Retirement Benefits the Insured Employee receives under a Retirement Plan.
5.  Benefits under the United States Social Security Act, the Canada Pension Plan, the Quebec Pension Plan or any similar plan or act as follows:
    (a)  disability or unreduced retirement benefits for which the Insured Employee and any spouse or child is eligible, because of the Insured Employee's Disability or eligibility for unreduced retirement benefits; or
    (b)  reduced retirement benefits received by the Insured Employee and any spouse or child because of the Insured Employee's receipt of reduced retirement benefits.
6.  Earnings the Insured Employee earns or receives from any form of employment.

These Other Income Benefits, except Retirement Benefits, are benefits resulting from the same Disability for which a Monthly Benefit is payable under this Policy.

An Insured Employee who may be entitled to some Other Income Benefit is required to actively pursue it; if he or she does not, Policy benefits may be denied or suspended.

COST-OF-LIVING FREEZE. After the first deduction for each of the Other Income Benefits, the Monthly Benefit will not be further reduced due to any cost-of-living increases payable under these Other Income Benefits.

LUMP SUM PAYMENTS. Other Income Benefits which are paid in a lump sum will be prorated on a monthly basis over the time period for which the sum is given. If no time period is stated, the sum will be prorated on a monthly basis over the time the Company expects the Insured Employee to live.

ESTIMATED PAYMENTS. When the Insured Employee may qualify for certain Other Income Benefits, the Company may estimate the amount of such benefits. The Company may reduce the Insured Employee's Monthly Benefits by such estimated amounts, which:
1.  have not yet been awarded or denied; or
2.  have been denied, if the denial is being appealed.
If an Insured Employee's Monthly Benefits have been reduced by an estimated amount; then such payments will be adjusted when the Company receives proof:
1.  of the amount actually awarded; or
2.  that benefits have been denied, and that any appeal the Company deems necessary has been completed. (In that event, a lump sum will be refunded to the Insured Employee.)

## RECURRENT DISABILITY

"Recurrent Disability" means a Disability due to an Injury or Sickness which is the same as, or related to, the cause of a prior Disability for which Monthly Benefits were payable. A Recurrent Disability will be treated as follows.

1.  A Recurrent Disability will be treated as a new period of Disability, and a new Elimination Period must be completed before further Monthly Benefits are payable; if the Insured Employee returns to his or her regular occupation on a full-time basis for six months or more.

2.  A Recurrent Disability will be treated as part of the prior Disability, if an Insured Employee returns to his or her regular occupation on a full-time basis for less than six months.

To qualify for a Monthly Benefit, the Insured Employee must earn less than the percentage of Predisability Income specified in the Partial Disability Monthly Benefit section. Monthly Benefit payments will be subject to all other terms of this Policy for the prior Disability.

If an Insured Employee becomes eligible for coverage under any other group Long Term Disability policy, this Recurrent Disability provision will cease to apply to that Insured Employee.

GL3001-LTD-15 98

02/01/03

## EXCLUSIONS

GENERAL EXCLUSIONS.  This Policy will not cover any period of Total or Partial Disability:
1.  due to war, declared or undeclared, or any act of war;
2.  due to intentionally self-inflicted injuries;
3.  due to active participation in a riot;
4.  due to the Insured Employee's committing of or the attempting to commit a felony or any type of assault or battery;
5.  during which the Insured Employee is incarcerated for the commission of a felony; or
6.  during which the Insured Employee is not under the regular care of a Physician.

PRE-EXISTING CONDITION EXCLUSION.  This Policy will not cover any Total or Partial Disability:
1.  which is caused or contributed to by, or results from a Pre-Existing Condition; and
2.  which begins in the first 12 months after the Insured Employee's Effective Date, unless such Insured Employee received no Treatment of the condition for 6 consecutive months after the Insured Employee's Effective Date.

"Pre-Existing Condition" means a Sickness or Injury for which the Insured Employee received treatment within 3 months prior to the Insured Employee's Effective Date.

"Treatment" means consultation, care or services provided by a Physician.  It includes diagnostic measures and the prescription, refill of prescription, or taking of any prescribed drugs or medicines.

GL3001-LTD-16 98

3/6/12 Pre-Ex.
02/01/03

## SPECIFIED INJURIES OR SICKNESSES LIMITATION

**LIMITATION.** If an Insured Employee is Disabled primarily due to one or more of the Specified Injuries or Sicknesses defined below; then Partial or Total Disability Monthly Benefits:

1.  will be payable subject to the terms of this Policy; but
2.  will be limited to 24 months for any one period of Disability; unless the Insured Employee is confined to a Hospital.

"Specified Injuries or Sicknesses" include any Mental Sickness, or Substance Abuse, as defined below.

**CONDITIONS**

1.  If the Insured Employee is confined in a Hospital at the end of the 24th month for which Policy benefits are paid for the Specified Injury or Sickness; then benefits will be payable until he or she is discharged from that facility.
2.  In no event will the Monthly Benefit be paid beyond the Maximum Benefit Period shown in the Schedule of Insurance, however.

**DEFINITIONS**

**"Hospital,"** as used in this provision, means:

1.  a general hospital which:
    (a) is licensed, approved or certified by the state where it is located;
    (b) is recognized by the Joint Commission on the Accreditation of Hospitals; or
    (c) is operated to treat resident inpatients; has a registered nurse always on duty; and has a lab, x-ray facility and place where major surgery is performed; and
2.  a skilled nursing care facility or unit, which provides convalescent or nursing care; and which is recognized as a skilled nursing care facility under Medicare.

The term Hospital also includes:

1.  a Mental Hospital when treatment is for a Mental Sickness; and
2.  a Treatment Center when treatment is for Substance Abuse.

**"Mental Hospital"** means a health care facility (or its psychiatric unit) which:

1.  is licensed, certified or approved as a mental hospital by the state where it is located;
2.  is equipped to treat resident inpatients' mental diseases or disorders; and
3.  has a resident psychiatrist on duty or on call at all times.

**"Mental Sickness"** means any emotional, behavioral, psychological, personality, adjustment, mood or stress-related abnormality, disorder, disturbance, dysfunction or syndrome; regardless of its cause. It includes, but is not limited to:

1.  schizophrenia or schizoaffective disorder;
2.  bipolar affective disorder, manic depression, or other psychosis; and
3.  obsessive-compulsive, depressive, panic or anxiety disorders.

These conditions are usually treated by a psychiatrist, a clinical psychologist or other qualified mental health care provider. Treatment usually involves psychotherapy, psychotropic drugs or similar methods of treatment.

Mental Sickness does not include irreversible dementia resulting from:

1.  stroke, trauma, viral infection, Alzheimer's disease; or
2.  other conditions which are not usually treated by a mental health care provider using psychotherapy, psychotropic drugs, or similar methods of treatment.

**"Substance Abuse"** means alcoholism, drug abuse, or chemical dependency of any type.

**"Treatment Center"** means a health care facility (or its medical or psychiatric unit) which:

1.  is licensed, certified or approved by the state where it is located;
2.  has a program for inpatient treatment of substance abuse; and
3.  provides such treatment based upon a written plan approved and supervised by a Physician.

GL3001-LTD-17 98

Specified Limit.
02/01/03

## VOLUNTARY VOCATIONAL REHABILITATION BENEFIT PROVISION

BENEFIT.  If an Insured Employee is Disabled and is receiving Policy benefits; then he or she may be eligible for a Vocational Rehabilitation Benefit.  This Benefit consists of services which may include:
1.    vocational evaluation, counseling, training or job placement;
2.    job modification or special equipment; and
3.    other services which the Company deems reasonably necessary to help the Insured Employee return to work.

The Company will determine the Insured Employee's eligibility and the amount of any Benefit payable.

ELIGIBILITY.  An Insured Employee may be eligible for this Benefit, if the Company finds that he or she:
1.    has a Disability that prevents the performance of his or her regular occupation; and, after the Own Occupation Period, also lacks the skills, training or experience needed to perform any other gainful occupation;
2.    has the physical and mental abilities needed to complete a Program; and
3.    is reasonably expected to return to work after completing the Program; in view of his or her degree of motivation and the labor force demand for workers in the proposed occupation.

The Company must also find that the cost of the proposed services is less than its expected claim liability.

AMOUNT.  The amount of any Vocational Rehabilitation Benefit will not exceed the Company's expected claims liability.  This benefit will not be payable for services covered under the Insured Employee's health care plan or any other vocational rehabilitation program.  Payment may be made to the provider of the services, at the Company's option.

CONDITIONS.  Either the Company, the Insured Employee, or his or her Physician may first propose vocational rehabilitation.  When a Program is approved by the Company, this Policy's definition of "Disability" will be waived during the rehabilitation period; but it will be reapplied after the Program ends.  The Company will determine the amount and duration of any Long Term Disability benefits payable after the Program ends.

LIMITATION.  This Policy will not cover any period of Disability for an Insured Employee who has received a Vocational Rehabilitation Benefit and has failed to complete the Program, without Good Cause.

DEFINITIONS

**"Good Cause"**, as used in this provision, means the Insured Employee's:
1.    documented physical or mental impairments, which render the Insured Employee unable to take part in or complete a Program;
2.    involvement in a medical program, which prevents or interferes with the Insured Employee's taking part in or completing a Program; or
3.    participating in good faith in some other vocational rehabilitation program, which:
     (a)    conflicts with taking part in or completing a Program developed by the Company; and
     (b)    is reasonably expected to return the Insured Employee to work.

**"Program"** means a written vocational rehabilitation program:
1.    which the Company develops with input from the Insured Employee; his or her Physician; and any current or prospective employer, when appropriate; and
2.    which describes the Program's goals; each party's responsibilities; and the times, dates and costs of the rehabilitation services.

## REASONABLE ACCOMMODATION BENEFIT

If an Insured Employee of the Employer is Disabled, and is receiving Policy benefits; then the Employer may be eligible for a Reasonable Accommodation Benefit. This Benefit reimburses the Employer for 50% of the expense incurred for reasonable accommodation services for the Insured Employee; but will not exceed:

1. a maximum benefit of $5,000 for any one Insured Employee; or
2. the Company's expected liability for the Insured Employee's Long Term Disability claim (whichever is less).

Such services may include:

1. providing the Insured Employee a more accessible parking space or entrance;
2. removing barriers or hazards to the Insured Employee from the worksite;
3. special seating, furniture or equipment for the Insured Employee's work station;
4. providing special training materials or translation services during the Insured Employee's training; and
5. other services the Company deems reasonably necessary to help the Insured Employee return to work with the Employer.

ELIGIBILITY FOR BENEFIT. The Company will determine the Employer's eligibility to receive the Benefit. To qualify for the Benefit, the Employer must have an Insured Employee:

(a) whose Disability prevents the performance of his or her regular occupation at the Employer's worksite;
(b) who has the physical and mental abilities needed to perform his or her own or another occupation at the Employer's worksite; but only with the help of the proposed accommodation; and
(c) who is reasonably expected to return to work with the help of the proposed accommodation.

The Company must also find that the requested Reasonable Accommodation Benefit is less than the expected liability for the Insured Employee's Long Term Disability claim.

WRITTEN PROPOSAL. The reasonable accommodation services must be provided in accord with a written proposal, which is developed with input from:

1. the Employer;
2. the Insured Employee; and
3. his or her Physician, when appropriate.

The proposal must state the purpose of the proposed accommodation; and the times, dates and costs of the services.

CONDITIONS. Either the Company, the Employer, the Insured Employee, or his or her Physician may first propose an accommodation.

The proposal must be approved by the Company in writing.

The Company will then reimburse the Employer, upon receipt of proof that the Employer:

1. has provided the services for the Insured Employee; and
2. has paid the provider for the services.

GL3001-LTD-17.3

02/01/03

## PRIOR INSURANCE CREDIT UPON TRANSFER OF INSURANCE CARRIERS

To prevent loss of coverage for an Employee because of a transfer of insurance carriers, this Policy will provide Prior Insurance Credit for employees insured under the prior carrier's policy on its termination date as follows.

FAILURE TO BE ACTIVELY-AT-WORK DUE TO INJURY OR SICKNESS.   Subject to premium payments, this Policy will provide coverage to an Employee:
    1.   who was insured by the prior carrier's policy at the time of transfer; and
    2.   who was not Actively-At-Work due to Injury or Sickness on this Policy's Effective Date.

The coverage will be that provided by the prior carrier's policy, had it remained in force.  The Company will pay:
    1.   the benefit that the prior carrier would have paid; minus
    2.   any amount for which the prior carrier is liable.

DISABILITY DUE TO A PRE-EXISTING CONDITION.  Benefits may be payable for a Total Disability due to a Pre-Existing Condition for an Employee who:
    1.   was insured by the prior carrier's policy at the time of transfer; and
    2.   was Actively-At-Work and insured under this Policy on this Policy's Effective Date.

The benefits will be determined as follows:
    1.   The Company will apply this Policy's Pre-Existing Condition Exclusion.  If the Insured Employee qualifies for benefits, such Insured Employee will be paid according to this Policy's benefit schedule.
    2.   If the Insured Employee cannot satisfy this Policy's Pre-Existing Condition Exclusion, but can satisfy the prior carrier's pre-existing condition exclusion giving consideration towards continuous time insured under both policies; then he or she will be paid in accord with the benefit schedule and all other terms, conditions and limitations of:
        (a)   this Policy without applying the Pre-Existing Condition Exclusion; or
        (b)   the prior carrier's policy;
        whichever is less.
    3.   If the Insured Employee cannot satisfy the Pre-Existing Condition Exclusion of this Policy or that of the prior carrier, no benefit will be paid.

Prior Insurance Credit

## FAMILY INCOME BENEFIT

The Company will pay a lump sum benefit to the Eligible Survivor, when proof is received that an Insured Employee died:

1.    after Disability had continued for 180 or more consecutive days; and
2.    while receiving a Monthly Benefit.

The benefit will be equal to three times the Insured Employee's Last Monthly Benefit.

"Last Monthly Benefit" means the gross Monthly Benefit payable to the Insured Employee immediately prior to death.  Any reductions for Other Income Benefits, or for earnings the Insured Employee received for Partial Disability Employment, will not apply.

"Eligible Survivor" means the Insured Employee's:

1.    surviving spouse; or, if none
2.    surviving children who are under age 25 on the Insured Employee's date of death.

If payment becomes due to the Insured Employee's children; then payment will be made to:

1.    the surviving children, in equal shares; or
2.    a person named by the Company to receive payments on the children's behalf.

This payment will be valid and effective against all claims by others representing, or claiming to represent, the children.

Three Month Survivor Benefit

GL3001-LTD-19 94

02/01/03

## COST-OF-LIVING ADJUSTMENT

The Company will make a Cost-of-Living Adjustment to an Insured Employee's Total Disability Monthly Benefit if such Insured Employee:

1.   has been Totally Disabled for 12 straight months following the Elimination Period; and
2.   is receiving Total Disability Monthly Benefits on July 1st.

The Insured Employee will be eligible for an additional Cost-of-Living Adjustment on each subsequent July 1st if such Insured Employee is continuously receiving Total Disability Monthly Benefits.

The Cost-of-Living Adjustment equals the Cost-of-Living Percentage (shown in the Schedule of Benefits) times the Insured Employee's Total Disability Monthly Benefit. For the purpose of calculating the Cost-of-Living Adjustment, the Total Disability Monthly Benefit will include any prior Cost-of-Living Adjustments. Each Cost-of-Living Adjustment will be added to the Insured Employee's Total Disability Monthly Benefit and will be paid monthly. The Cost-of-Living Adjustments are not subject to the Maximum Monthly Benefit.

COLA (End Maximum Benefit Period) Option II

GL3001-LTD-23.1

02/01/03

AMENDMENT TO BE ATTACHED TO AND MADE A PART OF POLICY NO.:    000010040289

ISSUED TO:  Genesys Conferencing, Inc.

It is agreed that the above policy be amended effective:  September 1, 2002

The Grace Period Section shown on form GL3001-LTD-11 is amended to read as follows:

A Grace Period of 60 days from the due date will be allowed for the payment of each premium after the first. The Policy will remain in effect during the Grace Period.  The Policyholder will be liable to the Company for the payment of all premiums due for the period the Policy remains in effect, however.

This amendment applies to disabilities commencing on or after such date.

The provisions and conditions set forth on any page hereof are a part of this amendment as fully as if recited over the signature hereto affixed. Nothing contained in this amendment shall change any of the terms and conditions of this Policy; except as stated above.

**Jefferson Pilot Financial Insurance Company**

<u>Officer of the Company</u>

GL1100A AMEND.

AMENDMENT NO. 2

TO BE ATTACHED TO AND MADE PART OF GROUP POLICY NO.:  000010040289

ISSUED TO:  Genesys Conferencing, Inc.


It is agreed that the above policy be amended by removing policy form GL3001-LTD-SB (both pages) and replacing it with policy form GL3001-LTD-SB (both pages) dated February 1, 2003.

The effective date of this amendment is February 1, 2003; but only with respect to disabilities incurred on or after that date.   Nothing contained in this amendment shall change any of the terms and conditions of this Policy; except as stated above.


**Jefferson Pilot Financial Insurance Company**

_Robert A. Reed_
Officer of the Company


GL1100A AMEND.

# Exhibit D

# IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

**JUDY MILLER**                                     )
     **Plaintiff,**                                )
                                                   )
**v.**                                              )
                                                   )    **CIVIL ACTION NO. CV-06-2610**
**JEFFERSON PILOT FINANCIAL**                       )
**INSURANCE COMPANY, A**                            )
**CORPORATION; AND LINCOLN**                        )
**FINANCIAL GROUP, INC., A**                        )
**CORPORATION**                                     )
     **Defendant.**                               )
                                                   )
                                                   )
                                                   )

## NOTICE OF FILING NOTICE OF REMOVAL

TO:   Carl S. Pittman
      Larry Knopf Attorneys, P.C.
      540 S. Perry Street
      Montgomery, Alabama 36104

**PLEASE TAKE NOTICE** that Jefferson Pilot Financial Insurance Company

and Lincoln Financial Group, Inc., Defendants in the above-styled cause, by and

through their counsel, have this date filed a Notice of Removal of this action in the

office of the Clerk of the United States District Court for the Middle District of

Alabama, Northern Division, a true and correct copy of said Joint Notice of Removal is

attached hereto.

1

01413439.1

**DATED** this __17__ day of November, 2006.

William B. Wahlheim, Jr.
John David Collins

Attorneys for Defendants
Jefferson Pilot Financial Insurance Company
and
Lincoln Financial Group, Inc.

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
2400 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35203-2602
(205) 254-1000

2

01413439.1

## CERTIFICATE OF SERVICE

       I hereby certify that a copy of the above and foregoing has been served upon the following listed person by placing a copy of the same in the United States mail, postage prepaid and properly addressed, this the _17th_ day of November, 2006:

    Carl S. Pittman
    Larry Knopf Attorneys, P.C.
    540 S. Perry Street
    Montgomery, Alabama 36104

                    OF COUNSEL

3